AMOS JOCK et al., Respondents-Appellants, v DONALD L. FIEN, Appellant-Respondent.

AMOS JOCK et al., Appellants-Respondents, v RICHARD VAN PETTY, Respondent-Appellant.

Fourth Department, January 31, 1992

APPEARANCES OF COUNSEL

*Sutton, De Leeuw, Clark & Darcy (John Darcy* of counsel), for Donald L. Fien, appellant-respondent.

*John A.R. Walsh, P. C.,* for Richard Van Petty, appellant-respondent.

*Villani & Grow (Anthony Villani* of counsel), for Amos Jock and another, respondents-appellants.

## OPINION OF THE COURT

GREEN, J.

Plaintiff Amos Jock was injured when he fell from an upright steel mold that he was preparing during the fabrication of a concrete septic tank at his place of employment. Mr. Jock was employed by defendant Richard Van Petty, who is the sole shareholder and officer of Van Petty Excavating, Inc. The accident occurred in a two-story building owned by defendant Donald L. Fien and leased to Van Petty. Plaintiffs (Mrs. Jock's cause of action is derivative) sued defendants alleging violations of sections 200, 240 (1) and 241 (6) of the Labor Law. All parties moved for summary judgment. The issues raised by the motions are whether Mr. Jock was engaged in building construction or another designated activity embraced by the Labor Law provisions alleged in the complaint and, if so, whether the mold from which he fell is a "structure" as contemplated in the Labor Law. Supreme Court concluded that Mr. Jock was involved in construction work and that the mold was a structure, but denied summary judgment to all parties on the ground that there are issues of fact regarding proximate cause and defendant Fien's control of the worksite. We disagree. We hold that Mr. Jock was not engaged in building construction or any other protected activity under sections 200, 240 (1) and 241 (6) of the Labor Law when the accident occurred. Thus, the complaint fails to state a valid cause of action under those sections of the Labor Law and defendants are entitled to summary judgment.

The facts are not in dispute; however, it is necessary to explain the manufacturing process involved in some detail since it is central to the issues posed on appeal. The process consists generally of assembling steel forms to create a mold and then pouring concrete into the mold. After the concrete dries the mold is taken apart by a crane. It is then reassembled and the process is repeated. At the start of the process a

tank already made sits upside down in a mold which weighs almost a ton. The entire framework is 5½ feet high and weighs 3 tons. A crane lifts the tank and mold to a nearby location where an employee climbs a ladder inside the tank to remove the inner core and then returns it to the original spot where concrete is poured. The fabricated septic tank is nearby, right side up, with its inner core removed. The employee climbs out of the septic tank to the inner core to stabilize it, then climbs out of the inner mold back into the finished septic tank. He then removes the top of the inner mold, climbs out of the finished tank, releases the pressure on the outside of the mold allowing it to separate from the poured septic tank, then moves it and lowers it around the inner mold.

Plaintiff fell from the concrete mold. He suffered a separated shoulder requiring multiple surgeries and a contusion to his head. Plaintiffs' son, who was immediately called to the factory, observed that, at the base of the form from which his father fell, there was oil used to lubricate the steel mold and that his father was covered with oil. The form was 5 to 6 feet in height. Furthermore, the son stated that there was no evidence of any safety devices in the area of the accident.

Labor Law §§ 240 and 241 are contained in article 10 of the Labor Law entitled "BUILDING CONSTRUCTION, DEMOLITION AND REPAIR WORK". Section 240 entitled "Scaffolding and other devices for use of employees" applies to "work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" (§ 240 [1]). Section 241 applies to "Construction, excavation and demolition work". Section 200 is in article 7 entitled "GENERAL PROVISIONS" and applies to "[a]ll places to which this chapter applies" (Labor Law § 200 [1]). Plaintiffs argue that "construction" is the protected activity involved here. We disagree.

The regulations (12 NYCRR 23-1.4 [b] [13]) define "construction work" as "All work of the types performed in the construction, erection, alteration, repair, maintenance, painting or moving of buildings or other structures, whether or not such work is performed in proximate relation to a specific building or other structure and includes, by way of illustration but not by way of limitation, the work of hoisting, land clearing, earth moving, grading, excavating, trenching, pipe and conduit laying, road and bridge construction, concreting, cleaning of the exterior surfaces including windows of any building or other structure under construction, equipment

installation and the structural installation of wood, metal, glass, plastic, masonry and other building materials in any form or for any purpose."

It would strain the meaning and intent of the statute and regulation to conclude that Mr. Jock was engaged in "construction work" as defined by the regulation when he was injured *(see, Malczewski v Cannon Design,* 125 AD2d 941; *cf., Brogan v International Business Machs. Corp.,* 157 AD2d 76, 80). The legislative purpose in enacting sections 240 and 241 of the Labor Law was to place "ultimate responsibility for safety practices at *building construction* jobs where such responsibility actually belongs, on the owner and general contractor" (1969 NY Legis Ann, at 407 [emphasis added]). Here, Mr. Jock was involved in a normal manufacturing process, which is outside the scope of Labor Law §§ 200, 240 (1) and 241 (6) and is instead covered under article 11 of the Labor Law and more specifically section 316, which applies to owners and occupiers of "FACTORIES". Factory buildings are specifically excluded from provisions of the Labor Law affecting structural changes and alterations (Labor Law § 2 [9]).

Mr. Jock was engaged in his normal occupation of fabricating septic tanks. The tank was one of many manufactured for sale to contractors or the general public. It was not part of any construction or sewer project or any renovation or alteration to the factory. In light of the statutory framework and legislative history we conclude that the injured plaintiff is not entitled to the protection of the Labor Law that he seeks. The primary purpose of sections 240 and 241 of the Labor Law is the protection of workers involved in building construction, not work as part of an ongoing manufacturing process *(see, Mordkofsky v V.C.V. Dev. Corp.,* 76 NY2d 573, 577). Accordingly, plaintiff was not engaged in a protected activity when he was injured and was not within the class of workers that article 10 of the Labor Law was enacted to protect *(see, Gibson v Worthington Div.,* 78 NY2d 1108; *Barnes v Park Cong. Church,* 145 AD2d 889, *lv dismissed* 74 NY2d 650).

Although the Labor Law should be construed liberally *(see, Koenig v Patrick Constr. Co.,* 298 NY 313, 319), it should also "be read in the natural way so as to get at the exact meaning without forcing it in any direction in order to meet the needs of either side in a particular case" *(Shannahan v Empire Eng'g Corp.,* 204 NY 543, 548; *see also, Rocovich v Consolidated Edison Co.,* 78 NY2d 509). Thus read, plaintiff's causes of action under Labor Law §§ 200, 240 (1) and 241 (6) are

without legal basis and should be dismissed. Given our resolution we need not address the other issues raised.

Accordingly, the order and judgment should be modified by granting defendants' motions for summary judgment.

DOERR, J. P., BOOMER, PINE and BALIO, JJ., concur.

Order and judgment unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with an opinion by GREEN, J.