[676 NYS2d 54]

CHRISTOPHER AGLI, Respondent-Appellant, v TURNER CON-STRUCTION COMPANY, INCORPORATED, et al., Appellants-Respondents, and PPG INDUSTRIES, Respondent, et al., Defendants. (And Other Actions.)

First Department, July 2, 1998

## APPEARANCES OF COUNSEL

*Brian J. Isaac* of counsel, New York City (*Thomas J. Moverman* on the brief; *Lipsig, Shapey, Manus & Moverman,* and *Pollack, Pollack, Isaac & DeCicco,* attorneys), for respondent-appellant.

*Kenneth Mauro* of counsel, Great Neck (*Timothy R. Capowski* on the brief; *Mauro & Goldberg,* and *Diamond, Cardo, King & Peters,* attorneys), for Turner Construction Company, Incorporated and another, appellants-respondents.

*Timothy J. Keane* of counsel, New York City (*Quirk & Bakalor, P. C.,* attorneys), for David Schulinder, Inc., appellant-respondent.

*Glenn J. Pogust* of counsel, New York City (*Jacob, Medinger & Finnegan, L. L. P.,* attorneys), for PPG Industries, Inc., respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an action to recover damages for personal injuries

sustained by plaintiff when he was allegedly struck by a portion of a falling, large, wire-mesh overhead net intended to protect workers at a construction site from falling debris. At issue on appeal is the applicability of certain provisions of the Labor Law to the accident.

Plaintiff had been employed by Gerald D. Hines Property Management, the managing agent of a 40-story office building under construction, as an operating engineer to perform certain maintenance tasks at the building, which had not yet been turned over to the owner. Plaintiff's assignment was to prepare the stock room and assemble the tools required to operate the building. As he expressed it, he was "[l]earning how to get around the building." As for his activities insofar as they related to construction activities, plaintiff described them as, "Once in a while you had to open a door or something for one of [the construction workers], let them in to do mechanical work, not really work with them." At the time of the accident he was on his way to read water meters, walking on a sidewalk near the loading dock where all construction site deliveries were made. The net, which was suspended at an angle, covered this area.

Insofar as is relevant, the defendants are 450 Lexington Venture, L.P., the owner of the property; Turner Construction Company, Incorporated, the project's general contractor; Zimmcor USA Corp., the subcontractor responsible for the construction of the curtain wall covering the building's exterior; and David Schulinder, Inc., Zimmcor's subcontractor for the glass installation in the curtain wall. Zimmcor impleaded PPG Industries, Inc., the owner of the tractor-trailer, loaded at a PPG plant in Ford City, Pennsylvania, with crates of glass, which, at the time of the incident, was backing up in an alley leading to the loading dock. Despite the absence of any eyewitnesses to any contact between the truck and net, plaintiff claims, as do certain of the parties defendant, that, the truck struck the net. Another defendant, Charlie Hall, the driver of the tractor-trailer, was employed by Linden Motor Freight, a second third-party defendant.

Since, as noted, none of the witnesses saw the tractor-trailer strike the net, the manner of the net's falling must, to the extent possible, be ascertained from evidence exclusively circumstantial. In his second amended complaint, plaintiff alleges, upon information and belief, that the tractor-trailer "struck portions of the protective netting, causing it to collapse

upon [him]", a position agreed to by Turner, whose duties included the removal of debris from the net as well as the maintenance of the net, and also by 450 Lexington, but not by Schulinder and PPG, who insist that the net fell due to the accumulation of debris or some inherent defect in the net. Plaintiff further alleges that James Jamerson, Schulinder's employee, who was directing Hall as he edged his truck into the alleyway, was negligent, as was PPG, in that it had improperly loaded the trailer. The trailer's top, which was open, had been covered with canvas to a height of 13 feet, within the legal interstate limit of 13 feet, 6 inches. According to his deposition testimony, while Hall was backing the tractor-trailer, at a rate of two or three miles per hour, he heard somebody yell "stop". At the same time, he heard "a clank or a noise, a strange noise." When he exited the truck to see what had happened, he observed the net lying across the entire trailer. He also noticed debris, such as paneling, sheetrock and garbage, that had fallen onto the truck when the net fell. At the time someone shouted "stop", the trailer, according to a Schulinder employee, was only six inches from the point where the glass would be unloaded.

The record contains evidence that the net required frequent maintenance and repair; it was often damaged by "burning operations". The record shows that trucks frequently struck the net at its low end but that, despite heavy trafficking, not a single truck ever struck the high end of the net, which was suspended approximately 18 to 20 feet above the ground. The accident in question happened under the high end of the net. Prior to backing in, Hall, the driver, inspected the alley and concluded that the 18-to-20-foot height clearance was more than sufficient. According to Jamerson, who was at the back of the tractor-trailer guiding the driver, at no time did the top of the tractor-trailer and the net come within five inches of each other. And, although he could not see the top right side of the tractor since he was standing on the other side, no part of the tractor extended higher than the 13-foot-high trailer. Jamerson saw rocks, bottles and sand fall from the net. Another witness saw debris, including concrete, in the fallen net. Immediately after the accident, Turner was issued a violation for failing properly to maintain the net. Turner's site safety manager, not a witness to the accident, suggested, as an explanation of how it happened, that a crank, between 2 and 12 inches high, located on the top of the tractor, became caught in the net, straining it and causing it to become detached from

its mooring. When he arrived at the accident site, he observed what he believed were crank handles, which he thought were entangled in the fallen net. According to Jamerson, as the tractor-trailer was being backed into the alley, the crank used to tighten the canvas on the top of the tractor was folded below the top of the vehicle.

In his complaint, plaintiff alleges common-law negligence, as well as violations of Labor Law §§ 200, 240 (1) and § 241 (6). After joinder of issue, plaintiff moved for partial summary judgment against Turner and 450 Lexington on the issue of liability pursuant to Labor Law § 240 (1). Turner and 450 Lexington cross-moved for, in part, dismissal of such claim and, in the event plaintiff were to be awarded summary judgment on his Labor Law § 240 (1) claim, for summary judgment against Zimmcor on their claim for contractual indemnification. Schulinder also cross-moved for summary judgment dismissing the complaint and third-party complaint against it, as well as all cross claims. PPG cross-moved for the same relief or, alternatively, for summary judgment on its indemnification claim against Hall and Linden. Finally, Zimmcor moved for summary judgment against Schulinder based on contractual indemnification.

The IAS Court denied plaintiff's motion for partial summary judgment and granted Turner and 450 Lexington's cross motion to dismiss the Labor Law § 240 (1) claim on the ground that plaintiff "was not performing any of the construction activities listed in the statute" and thus plaintiff "fail[ed] to establish that he was a member of the class intended to be protected by [the statute]." It denied, however, without explanation, their motion as to plaintiff's other Labor Law claims. In light of the dismissal of the Labor Law § 240 (1) claim, the court denied, as moot, Turner and 450 Lexington's request for summary judgment on their contractual indemnification claim against Zimmcor. The latter's cross motion for summary judgment against Schulinder was denied as premature, since "[t]here has been no determination that Schulinder's negligence was a substantial factor in causing the accident", a prerequisite under the contract between Schulinder and Zimmcor to Schulinder's indemnification of Zimmcor.

The IAS Court granted PPG's cross motion for summary judgment dismissal on the ground that "[t]here is no proof that PPG did anything other than supply a trailer loaded with glass to be driven by Linden from New Jersey to the site", but declined to do the same for Schulinder because "[i]t is for the

jury to decide whether to infer that it was more probable than not that the net collapsed from the weight of debris, from some other cause, or because it was snagged by the truck that was being directed down the alleyway by a Schulinder employee."

On these cross appeals, plaintiff argues that the motion court erred in determining that he was not entitled to the protection of Labor Law § 240 (1) and in dismissing the complaint against PPG. Turner and 450 Lexington cross-appeal from the court's failure to dismiss plaintiff's claims under Labor Law §§ 200 and 241 (6) as well, arguing that since plaintiff was not in any way employed or involved in construction work he was not entitled to Labor Law protection. Turner and 450 Lexington also argue that, given the unresolved questions as to its liability, the court erred in granting summary judgment to PPG. Finally, Schulinder cross-appeals from the denial of its summary judgment motion, arguing that while, where appropriate, circumstantial evidence will support a verdict, speculation will not.

■ We agree with the trial court's holding that plaintiff is not a member of the special class for whose protection the Labor Law was intended. The Labor Law's strictures run to those who are " 'both permitted or suffered to work on a building or structure and [were] hired by someone, be it owner, contractor or their agent'." (*Mordkofsky v V.C.V. Dev. Corp.*, 76 NY2d 573, 576-577, quoting *Whelen v Warwick Val. Civic & Social Club*, 47 NY2d 970, 971.) The Court of Appeals has directly addressed the issue in at least two other decisions. In *Gibson v Worthington Div.* (78 NY2d 1108), the plaintiff, in preparation for submitting a repair bid, was injured as he was inspecting the roof of a building under construction. Even though the plaintiff was an employee of a company engaged in construction work, since the employer had not been hired to work at the site at the time of the accident, he was not a person "employed" to do repairs and Labor Law §§ 200, 240 (1) and § 241 (6) were held to be unavailable to him. Any recovery would be limited to the traditional negligence cause of action that plaintiff had asserted.

In *Jock v Fien* (176 AD2d 6, *mod* 80 NY2d 965), the plaintiff, an employee of a septic tank manufacturer, was injured when he fell from an upright steel mold that he was preparing during his customary occupational work of fabricating a concrete septic tank. In dismissing the Labor Law §§ 200, 240 (1) and § 241 (6) claims, the Appellate Division held that the work plaintiff was engaged in "was not part of any construction or

sewer project or any renovation or alteration to the [building]." (176 AD2d, *supra,* at 9.) The Court of Appeals modified by reinstating the claim under Labor Law § 200, which, under subdivision (1), covers "[a]ll places to which [the Labor Law] applies." The basis for the Court's modification was that section 200 "is not limited to construction work and does not exclude employees engaged in normal manufacturing processes" (80 NY2d, *supra,* at 967). In upholding the dismissal of the section 240 (1) and section 241 (6) claims, the Court agreed with the Appellate Division that the plaintiff "was not engaged in any construction or sewer project and was not involved in renovation or alteration work on the [building]" (*supra,* at 968).

In reaffirming the rule limiting the benefit of the Labor Law to those engaged in the performance of work on a structure, this Court, in *Brown v Christopher St. Owners Corp.* (211 AD2d 441, 442, *affd* 87 NY2d 938), stated: "It is well settled that, to recover under Labor Law §§ 200, 240 and 241 as a member of the special class for whose protection these provisions were adopted, a plaintiff must establish two criteria: (1) that he was permitted or suffered to perform work on a structure and, (2) that he was hired by the owner, the general contractor or an agent of the owner or general contractor."

In *Phillips v City of New York* (228 AD2d 570, 571), the Second Department, in a case where the plaintiff was injured while repairing a loader at a landfill project, held that Labor Law § 240 (1) was "not designed to encompass the type of routine maintenance work performed * * * which is 'far removed from the risks associated with the construction or demolition of a building' (*Manente v Ropost, Inc.,* 136 AD2d 681, 682), and that takes place 'in a non-construction, non-renovation context' (*Edwards v Twenty-Four Twenty-Six Main St. Assocs.,* 195 AD2d 592, 593)." Similarly, in *Shields v St. Marks Housing Assocs.* (230 AD2d 903, *lv denied* 91 NY2d 806), the Second Department rejected the Labor Law claims of a night watchman/security guard, an employee of the general contractor, who was injured when he fell from a ladder at a building being renovated. In rejecting his Labor Law § 240 (1) and § 241 (6) claims, the Court held that the plaintiff had failed to show that he was " 'permitted or suffered to work on a building or structure' " insofar as section 241 (6) is concerned (*supra,* at 904) and as to section 240 (1), "that he was performing work necessary and incidental to the erection or repair of a building or structure" (*supra,* at 904).

In *Farrell v Dick Enters.* (227 AD2d 956), the plaintiff, while engaged in his duties as a correction officer at the Mid-State

Correctional Facility, was injured when he stepped into a hole in the ground that had been dug during the installation of a security fence. In dismissing his Labor Law § 241 (6) claim, the Fourth Department held that "he was not a worker employed to carry out a construction task, nor was he lawfully frequenting the premises within the meaning of Labor Law § 241 (6) and 12 NYCRR 23-1.3 and 23-1.4 (b) (39)." (*Supra.*) In a recent decision of this Court, *Valinoti v Sandvik Seamco* (246 AD2d 344), where the issue was whether a plaintiff hired to work "at" the building site where renovation was in progress, but not "on" the building renovation, was entitled to the Labor Law's protection, the plaintiff had tripped on a metal welding stick that had been left on the ground. This Court held that since the plaintiff was not working on the building renovation and was not a person "employed" to carry out any repairs he was not within the class of workers intended to be protected.

To sustain the argument that his Labor Law § 240 (1) claim is viable, plaintiff relies on two decisions, one from this Court, *Williamson v Borg Florman Dev. Corp.* (191 AD2d 335, *lv denied* 81 NY2d 711) and the other, *Reilly v McKilligan Indus. Supply Corp.* (124 AD2d 953), from the Third Department. In *Williamson*, which involved a Labor Law § 241 (6) claim, not one under section 240 (1), the plaintiff, a dietary aide, was injured when she stepped onto a sheetrock panel that had been improperly placed over a trench, dug to facilitate the installation of pipes during the course of an extensive renovation, in the floor of the kitchen area where she was required to work. This Court rejected the defendant's argument that the plaintiff was not covered and, citing *Reilly* (*supra*), held that "employees present at the worksite, even if they are not engaged in the actual construction, are protected by the statute." (*Williamson v Borg Florman Dev. Corp., supra,* at 336.) This holding, however, is flatly contradicted by the Court of Appeals holding in *Whelen v Warwick Val. Civic & Social Club* (47 NY2d 970, 971, *supra),* cited by the Court of Appeals in *Mordkofsky v V.C.V Dev. Corp.* (76 NY2d, *supra,* at 576-577), that, to invoke the protections of Labor Law §§ 200, 240 (1) and § 241 (6), the injured party " 'must demonstrate that he was both permitted or suffered to work on a building or structure and that he was hired by someone, be it owner, contractor or their agent'." (*See, Gibson v Worthington Div., supra; see also, Chabot v Baer,* 55 NY2d 844.) And, it should be noted, this Court did not follow *Williamson* in its subsequent decisions when it considered the

same issue. (*See, e.g., Brown v Christopher St. Owners Corp.*, 211 AD2d 441, *supra; Valinoti v Sandvik Seamco*, 246 AD2d 345-346, *supra*.)

As this record shows, plaintiff was not employed or involved in construction work. His activities, consisting exclusively of maintenance functions, such as seeing to the heating and cooling of the building, taking utility-meter readings, assembling tools for the maintenance and operation of the building and arranging the stock room on behalf of the managing agent, did not involve " 'making a *significant* physical change to the configuration or composition of the building or structure' "; rather, he was engaged in "a simple, routine activity." (*Weininger v Hagedorn & Co.*, 91 NY2d 958, 960, quoting *Joblon v Solow*, 91 NY2d 457, 465; *see also, Robinson v City of New York*, 211 AD2d 600.)

Nor, as his testimony shows, did plaintiff work with the construction companies. It is undisputed that, at the time of his accident, he was on his way to read water meters. In similar circumstances, the Court in *Phillips v City of New York* (228 AD2d 570, *supra*), held that Labor Law § 240 (1) was not designed to encompass routine maintenance work "which is 'far removed from the risks associated with the construction or demolition of a building' [citation omitted], and that takes place 'in a non-construction, non-renovation context' [citation omitted]". (*Supra,* at 571.) Similarly, with respect to the Labor Law § 241 (6) claim, the Court held that, at the time of his injury, the injured party "was not engaged in 'construction work', as defined by the industrial code (12 NYCRR 23-1.4 [b] [13])." (*Supra,* at 571; *Walton v Devi Corp.*, 215 AD2d 60, *lv denied* 87 NY2d 809.)

Thus, since plaintiff was not employed or engaged in construction at the time of the accident and, instead, was injured in the performance of routine maintenance, his Labor Law § 240 (1) claim was properly dismissed; his Labor Law § 241 (6) claim should, for the same reason, also have been dismissed. Plaintiff's claim pursuant to Labor Law § 200, a codification of the common-law duty of an owner or contractor to provide employees with a safe place to work, the application of which is not limited to construction work and does not exclude maintenance personnel, was properly sustained. (*See, e.g., Jock v Fien, supra*, 80 NY2d, at 967.)

The remaining issues in the case revolve around whether plaintiff has made out a sufficient case in negligence to withstand Schulinder's and PPG's summary judgment motions.

As noted, the IAS Court denied the cross motion of Schulinder but granted that of PPG. Both argue that, since there was no evidence, in admissible form, that the tractor-trailer struck the net, an essential element of proof in any recovery against either of them, plaintiff's case is based entirely upon speculation and surmise. As the record shows, no one saw what actually caused the net to fall.

Needless to say, "[a] jury verdict must be based on more than mere speculation or guesswork." (*Bernstein v City of New York*, 69 NY2d 1020, 1021.) Moreover, "[w]here the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible, and it is just as reasonable and probable that the injury was the result of one cause as the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury." (*Ingersoll v Liberty Bank*, 278 NY 1, 7; *Bernstein v City of New York, supra*, at 1021-1022.) The plaintiff need not refute remote possibilities (*supra,* at 1022) or exclude the possibility that factors other than the defendant's breach of duty may have caused the accident (*Ferraro v Cinelli*, 193 AD2d 409).

In that regard, as noted, plaintiff alleges in his second amended complaint that, upon information and belief, the tractor-trailer "struck portions of the protective netting, causing it to collapse upon [him]." While the proof in support of that theory is scant, the record is not completely devoid of evidence in that regard. On the day after the accident, Turner's site safety manager reported the incident to the Department of Buildings as "a truck * * * backing down * * * to the loading dock unknowingly snagged a portion of the overhead nets." The property manager prepared an accident report stating that "[t]he netting, which was attached at one end to the building and at the other end to the Park Avenue Viaduct was struck by a truck that was backing into Depew Place. This apparently ripped the support bracket from the Viaduct causing it to swing down approximately 18-20 feet." Both of these reports are preliminary accounts that appear to be based on conclusory assumptions of what must have happened, rather than documented investigative conclusions. There is, however, evidence that trucks had snagged the safety net in the past, albeit at the lower end of the net.

Although it is difficult, on this record, to determine whether the netting likely collapsed because it was struck by a tractor-trailer or because of an excessive accumulation of debris or

some defect in the net, it is clear that there must have been negligence on the part of either the Turner interests, responsible for the netting, or the Hall interests, responsible for the operation of the tractor-trailer, or, possibly, both. Otherwise, the net would not have fallen. And, while plaintiff has failed to set forth the overaccumulation of debris or defect in the net as an alternative theory of liability, a deficient pleading can always be amended. Thus, in our view, plaintiff has a viable cause of action for common-law negligence and, in turn, a claim for a Labor Law § 200 violation.

The IAS Court's grant of summary judgment dismissing the complaint against PPG and denial of similar relief to Schulinder should be upheld. Even if the crank handles were snagged in the net, as claimed by Turner's site safety manager, it would take a great leap in logic to conclude, from that mere circumstance, that PPG, in fastening the canvas top, had improperly left the crank handles in an upright position. Indeed, it is not surprising that the crank handles would be enmeshed in a net that had fallen onto the tractor. This circumstance in no way evidences an improper loading of cargo. As for Schulinder, whose employee was directing Hall, the tractor-trailer driver, at the time the net fell as the vehicle was backing up to the loading dock, its liability cannot be separated from that of Hall.

Accordingly, the order of the Supreme Court, New York County (Beverly Cohen, J.), entered July 16, 1997, which, *inter alia*, denied plaintiff's motion for partial summary judgment and granted the cross motion by defendants Turner Construction Company and 450 Lexington Venture only to the extent of dismissing the claim under Labor Law § 240 (1), should be modified, on the law, to dismiss the cause of action based on Labor Law § 241 (6) and, except as thus modified, affirmed, without costs or disbursements.

LERNER, P. J., MILONAS, ELLERIN and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered July 16, 1997, modified, on the law, to dismiss the cause of action based on Labor Law § 241 (6) and, except as thus modified, affirmed, without costs or disbursements.