■ MARK MORCHIK et al., Respondents, v TRINITY SCHOOL et al., Defendants, and OGDEN ALLIED BUILDING AND AIRPORT SERVICES CORP., Appellant. (And Other Actions.) [684 NYS2d 534] —Order, Supreme Court, New York County (Richard Braun, J.), entered September 25, 1997, which to the extent appealed from as limited by the briefs, denied a motion by defendant and third-party defendant Ogden Allied Building and Airport Services Corp. (Ogden) for summary judgment dismissing the complaint, third-party complaint, cross-claims and counter-claims against it, unanimously reversed, on the law and the facts, without costs, the motion granted, and all claims against Ogden dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint, third-party complaint, cross-claims and counterclaims.

In this personal injury action, plaintiff Mark Morchik (plaintiff), a sous-chef in the cafeteria at defendant Trinity School (Trinity),* alleges that at about 5:30 P.M. on December 14, 1993, he injured his hand when he slipped and fell on a shoe and some dirty uniforms that had been left on the floor of the locker room by one of his fellow cafeteria workers. The actual employer of the cafeteria workers, including plaintiff, was third-party defendant Flik International Corp. (Flik), with which Trinity contracted to provide cafeteria service.

Trinity also contracted with Ogden to perform janitorial services. The relevant portions of the Ogden contract state:

"NIGHTLY * * *

"Locker Rooms

"Mop excess water on floor and police lavatories as needed * * *

"DAILY * * *

"Police pool area and locker room."

In this context, "police" means to remove debris from the floor. Donald Verteramo, the Ogden employee who was the building manager assigned to Trinity, testified at his deposition that it was not part of Ogden's janitorial duties to pick up personal

---

* Though Trinity cross-moved for summary judgment contemporaneously with Ogden's motion, Trinity has not appealed the IAS Court's denial of its motion.

belongings left on the locker room floor by Flik employees, and that the custodians would simply move any obstacles out of the way, if necessary, to finish mopping the floor.

Verteramo's testimony was corroborated by that of Jerome Musillo, the Flik employee who was plaintiff's supervisor at the time of the accident. Musillo stated that he instructed Ogden custodians to notify him if they encountered clothes or shoes on the locker room floor. If Musillo saw such items on the floor, he would put them away himself, and he expected the cafeteria workers to do the same (rather than notifying Ogden, for instance). Both Musillo and plaintiff also said that Musillo occasionally called impromptu meetings with the cafeteria staff to instruct them in the proper way to store their clothes and shoes and to impress upon them their responsibility to pick up after themselves.

The Ogden custodial staff typically cleaned the cafeteria employees' locker room between 11:00 A.M. and noon. According to plaintiff, he did not notice the floor of the locker room being cluttered at that time. Discarded articles of clothing generally became a problem after 3:00 P.M., when most of plaintiff's fellow employees ended their shift and changed back into their street clothes. As the sous-chef, plaintiff often worked later than the other cafeteria staff members.

Plaintiff sued Trinity and Ogden, among others, based on a theory of negligence. Trinity asserted cross-claims and commenced a third-party action against Ogden and Flik for indemnification and/or contribution. Flik asserted a cross-claim against Ogden for indemnification and/or contribution, as well. This appeal concerns the IAS Court's denial of Ogden's motion for summary judgment, in which Ogden contended that it had no duty under the janitorial contract to clean up the uniforms and shoes, and that, in any event, it did not have constructive notice of any such items left on the floor at the time of plaintiff's accident.

The IAS Court held that Ogden had not proven its entitlement to summary judgment because Ogden's main evidence was an unsigned transcript of plaintiff's deposition, but Ogden had not shown that it had sent the transcript to plaintiff and that plaintiff had refused to sign it, as required by CPLR 3116 (a). The transcript here, though unsigned, had been certified by the court reporter. Moreover, plaintiff himself used portions of it in his opposition papers. We find that the court erred in denying the motion on these grounds and additionally find that on this record, Ogden has demonstrated its right to summary judgment.

CPLR 3116 (a) requires the deposed party's signature on a deposition transcript before it can be used as a *deposition* (though this Court has even found a deposition transcript admissible as such when it was certified but not signed [*Zabari v City of New York*, 242 AD2d 15, 17]). However, these requirements are irrelevant to the instant case, because Ogden was merely seeking to use plaintiff's deposition as an *admission*, which need not be in deposition form. An unsigned but certified deposition transcript of a party can be used by the opposing party as an admission in support of a summary judgment motion (*Newell Co. v Rice*, 236 AD2d 843, 844, *lv denied* 90 NY2d 807).

Turning to the merits, we hold that Ogden has met its burden of showing that no triable issues exist as to its liability for negligence. In order to make out a prima facie case, a plaintiff in a slip-and-fall action must show that the defendant breached a duty of care towards him (*Kaufman v Silver*, 90 NY2d 204, 206), and that the defendant either created the hazardous condition or had actual or constructive notice thereof (*Piacquadio v Recine Realty Corp.*, 84 NY2d 967, 969). Plaintiff failed to raise a question of fact as to either of these issues (*Zuckerman v City of New York*, 49 NY2d 557).

Ogden's uncontroverted evidence showed that Ogden was not expected to remove the type of obstruction that allegedly caused plaintiff's fall. Musillo arguably had no incentive to favor Ogden in his testimony, since he testified as a representative of Flik, which was asserting cross-claims against Ogden for indemnification and/or contribution. Both he and Verteramo made it clear that Flik employees were responsible for proper storage of the clothes and shoes worn by themselves and their fellow workers. This conclusion is supported by plaintiff's testimony that if the floor became cluttered, he would complain to Musillo, not to the Ogden janitors. Furthermore, the only reference to policing locker room floors in Ogden's contract appears to refer to the floor of the pool locker room used by the students, not this locker room. The fact that Ogden janitors occasionally pushed clothes and shoes out of the way of their mops does not mean that they assumed a duty to clear away such items (*Boege v Ulster Light.*, 241 AD2d 600, 601).

Furthermore, plaintiff did not raise a question of fact as to Ogden's constructive notice of the alleged obstruction. Ogden performed its cleaning services in the morning, whereas plaintiff's deposition testimony suggests that the locker room was usually neat in the morning (including the day of the accident) and that the clothes and shoes were strewn on the

floor in the afternoon. Ogden's general awareness that this problem occasionally occurred is insufficient to charge it with constructive notice (*Gordon v American Museum of Natural History*, 67 NY2d 836, 838).

Finally, plaintiff's contention that the lighting in the room was inadequate is insufficient to raise an issue as to Ogden's liability, since Ogden's contract did not require it to change the light bulbs, let alone upgrade the lighting system. Accordingly, Ogden's motion for summary judgment should have been granted. Concur—Rosenberger, J. P., Nardelli, Williams and Rubin, JJ.