OPINION OF THE COURT
Jack M. Battaglia, J.
Plaintiff Haxhi Delishi alleges that, on November 14, 2005, while working for third-party defendant Collins Building Services, Inc. (Collins), he sustained injury when he slipped and fell at a construction site on the 10th floor of the building at One West 39th Street, New York County. His verified complaint alleges that each named defendant was negligent in causing the injury-producing condition or allowing it to exist, or in failing to warn him about it.
Five of the named defendants have moved for an order, pursuant to CPLR 3212, dismissing the verified complaint and cross claims against them — Stateside Contracting Co., Inc. i/s/h/a Stateside Contracting Co. (Stateside); Jordan Daniels Electrical Contractors, Inc. (Jordan Daniels); Property Owner (USA), LLC and HSBC North America, Inc. (collectively HSBC); and Jones Lang LaSalle Services, Inc. (Jones Lang). Third-party defendant Collins has moved for an order, pursuant to CPLR 3212, dismissing the third-party complaint of defendant/third-party plaintiff Jones Lang.
Except for the Jones Lang motion, all of the motions are timely, having been served within 60 days after plaintiff filed his note of issue on October 6, 2010, as required by the Uniform Civil Term Rules of the Supreme Court, Kings County (see part C, ¶ 6; Leonard v Khan, 69 AD3d 812, 814 [2d Dept 2010]; Kennedy v Bae, 51 AD3d 980, 981 [2d Dept 2008] [predecessor rule 13 of the Uniform Civil Term Rules of the Supreme Court, Kings County]). Jones Lang’s motion was not served until December 22, 2010, and is not based upon “nearly identical” grounds of any of the timely motions (see Lennard v Khan, 69 AD3d at 814.) Since Jones Lang does not acknowledge the *665 untimeliness of its motion, it does not attempt to show “good cause” for its being late, which in any event would be belied by the timeliness of codefendants’ motions.
The motion of defendant/third-party plaintiff Jones Lang LaSalle Services, Inc. is, therefore, denied. To the extent, however, that Jones Lang’s motion papers also serve as opposition to the motion of third-party defendant Collins, and to the extent that the opposition is supported by evidence in admissible form, it will be considered for that purpose.
Deposition Transcripts
The papers filed by the parties on these motions measure, literally, three feet high, comprised primarily of duplicate copies of various deposition transcripts. The court could not fault the parties for completeness if the transcripts were rendered admissible as evidence, but, as will appear, many were not.
A total of 49 exhibits are comprised of deposition transcripts. Seventeen of the transcripts are not signed by either the deponent or the court reporter, and none of them is shown to have been submitted to the deponent for review and signature pursuant to CPLR 3116 (a). These 17 transcripts are clearly inadmissible as evidence in support of summary judgment. (See Moffett v Gerardi, 75 AD3d 496, 498 [2d Dept 2010]; Marmer v IF USA Express, Inc., 73 AD3d 868, 869 [2d Dept 2010]; Myers v Polytechnic Preparatory Country Day School, 50 AD3d 868, 869 [2d Dept 2008]; Martinez v 123-16 Liberty Ave. Realty Corp., 47 AD3d 901, 902 [2d Dept 2008]; McDonald v Mauss, 38 AD3d 727, 728 [2d Dept 2007]; Scotto v Marra, 23 AD3d 543, 544 [2d Dept 2005]; Santos v Intown Assoc., 17 AD3d 564, 565 [2d Dept 2005]; Pina v Flik Intl. Corp., 25 AD3d 772, 773 [2d Dept 2006]; Lalli v Abe, 234 AD2d 346, 347 [2d Dept 1996].) Nor may any of these transcripts be considered in opposition in the absence of an explanation for their not being in admissible form. (See Moffett v Gerardi, 75 AD3d at 498-499.)
Nonetheless, there is limited authority that where the transcript is submitted by the party deponent, it is “adopted as accurate.” (See Ashif v Won Ok Lee, 57 AD3d 700, 700 [2d Dept 2008].) But unless the requirement for evidence in admissible form is to be abandoned entirely, the transcript must at least contain the reporter’s certification that the testimony was sworn.
There is also limited authority in the First and Fourth Departments that “[a]n unsigned but certified deposition transcript of *666 a party can be used by the opposing party as an admission.” (See Morchik v Trinity School, 257 AD2d 534, 536 [1st Dept 1999]; see also Garris v City of New York, 65 AD3d 953 [1st Dept 2009]; R.M. Newell Co. v Rice, 236 AD2d 843, 844 [4th Dept 1997]; see also Arnold v Schmittau, 18 Misc 3d 135[A], 2008 NY Slip Op 50184[U], *2 [App Term, 2d Dept 2008].) There is logic to this position, but it is apparent from the authorities cited above that it has not commended itself to the Second Department, and this court is bound to follow the Second Department (see Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]; see also People v Turner, 5 NY3d 476, 482 [2005]).
Where, as here, however, several parties have “adopted as accurate” the deposition transcripts of their own witnesses (see Ashif v Won Ok Lee, 57 AD3d at 700), it may not make much practical difference whether or not an opposing party could rely on the transcripts if they were not submitted by the party for whom the deponent testified. On a motion for summary judgment, the court is entitled to “search the record . . . with respect to a cause of action or issue that is the subject of the motions before the court” (see East End Cement & Stone, Inc. v Carnevale, 73 AD3d 974, 976 [2d Dept 2010], quoting Dunham v Hilco Constr. Co., 89 NY2d 425, 429-430 [1996]). Once a party has “adopted as accurate” sworn testimony of its own witness, there is no question as to fair notice or an opportunity to defend against its use by an opposing party (see Felberbaum v Weinberger, 40 AD3d 808, 809 [2d Dept 2007]; see also Quizhpe v Luvin Constr., 70 AD3d 912, 914 [2d Dept 2010]; Whitman Realty Group, Inc. v Galano, 52 AD3d 505, 506 [2d Dept 2008]).
Only three of the 49 deposition exhibits are comprised of a transcript that is certified and signed by the deponent, or that is shown to have been submitted to the deponent for review and signature pursuant to CPLR 3116 (a): exhibit H in Stateside’s papers, deponent John Bonanno; exhibit I in Jordan Daniels’s papers, plaintiff’s testimony at the February 3, 2009 session only; and exhibit J in Jordan Daniels’s papers, deponent Eugene Daniels.
Only five of the 49 exhibits are comprised of a transcript that is certified by the reporter, and submitted by the party deponent or a party as to its witness: exhibit O in Collins’s papers, deponent Miguel Valentin; exhibit P in Collins’s papers, deponent John Baden; exhibit S in HSBC’s papers, deponent Richard Tedaldi; exhibit T in HSBC’s papers, deponent Ronald *667 Winchester; and exhibit C in plaintiff’s papers, plaintiff’s testimony at the September 12, 2008 and November 6, 2008 sessions. The court will consider these transcripts on any movant’s showing and any party’s opposition.
There is no basis for consideration for any purpose of the transcripts of deposition testimony of the following witnesses: plaintiff at the May 5, 2009 session; Mark Gerard, witness for D.E Facilities, Inc., at either the June 24, 2009 or October 22, 2009 session; and nonparty Vaughan Swanson, former employee of D.E Facilities.
Plaintiff alleges that on November 14, 2005 he was employed as a porter for third-party defendant Collins, with responsibility for cleaning bathrooms at One West 39th Street. The Data Center on the 8th, 9th, and 10th floors of the building had been undergoing upgrade. After exiting the men’s bathroom on the 10th floor, plaintiff stepped on a piece of cardboard that, he alleges, was covering a metal pipe approximately six inches long, and he fell backward to the floor.
Defendant HSBC owns the building at One West 39th Street; defendant/third-party plaintiff Jones Lang was the facility manager for the property. Defendant D.E Facilities was the general contractor for the upgrade project; defendant Stateside provided general carpentry and debris removal for the project; defendant Jordan Daniels provided electrical services to the project; Stateside and Jordan Daniels were D.E subcontractors.
Applicable Law
There is a considerable body of case law that addresses the “common-law duty imposed on owners and contractors to provide a safe construction site for workers” (see Astarita v Flintlock Constr. Servs., LLC, 69 AD3d 888, 888 [2d Dept 2010]; see also Bruno v Board of Educ. of Cent. School Dist. #5, 74 AD3d 1114, 1115 [2d Dept 2010]), including workers not directly engaged on the construction project (see Jock v Fien, 80 NY2d 965, 967 [1992]; Beadleston v American Tissue Corp., 41 AD3d 1074, 1076-1077 [3d Dept 2007]; Agli v Turner Constr. Co., 246 AD2d 16, 24 [1st Dept 1998] [“routine maintenance”]). None of that case law has found its way into the voluminous papers that the movants have deposited on the court. Two Third Department decisions from the 1980s are cited in plaintiffs opposition papers. (See plaintiffs mem of law in opposition to defendants’ motions for summary judgment at 20-21, citing Bottone v New York Tel. Co., 110 AD2d 922 [3d Dept 1985] and Keefner v City of Albany, 77 AD2d 747 [3d Dept 1980].)
*668 It is tempting to deny the motions on the simple ground that a party cannot show prima facie that it is entitled to judgment as a matter of law without presenting the applicable law. But that would risk similarly voluminous papers seeking reargument or renewal (see CPLR 2221), and, to be fair, would ignore the parties’ arguments on the evidence, which the court can relate to certain elements of the owner’s and contractor’s respective duties.
As conceived by the Second Department, construction-workplace cases “fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a work site, and those involving the manner in which the work is performed.” (See Ortega v Puccia, 57 AD3d 54, 61 [2d Dept 2008].) “Where a premises condition is at issue, property owners may be held liable ... if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident.” (See id.)
“[W]hen a claim arises out of alleged defects or dangers in the methods or materials of the work, recovery against the owner or general contractor cannot be had . . . unless it is shown that the party to be charged had the authority to supervise or control the performance of the work.” (See id.)
Although “[t]hese two categories should be viewed in the disjunctive” (see id.), there are cases that “do not fit neatly into either box” (see Chowdhury v Rodriguez, 57 AD3d 121, 129 [2d Dept 2008]), and where “[a]n argument can be made on behalf of the applicability of either the ‘supervisory authority’ standard or the ‘defect creation/actual or constructive notice’ standard” (see id.). “[T]his case,” however, “is a ‘dangerous condition’ case, and not a ‘methods and means’ case, since the plaintiff was not injured as a result of the manner in which the work was being performed but, rather, as a result of allegedly tripping on a dangerous condition at the work site.” (See Mott v Tromel Constr. Corp., 79 AD3d 829, 830 [2d Dept 2010] [citations omitted]; see also Nankervis v Long Is. Univ., 78 AD3d 799, 800 [2d Dept 2010] [“plaintiff allegedly slipped on a pipe covered by debris”]; Slikas v Cyclone Realty, LLC, 78 AD3d 144, 148 [2d Dept 2010] [“mislaid tool left ... by painters who had been working at the site earlier in the day . . . created a tripping hazard”]; Lane v Fratello Constr. Co., 52 AD3d 575, 576 [2d Dept 2008] [“pile of debris created by several contractors”].)
*669 In a “dangerous condition” case, a property owner’s liability is “predicated upon evidence of the owner’s creation of the condition or actual or constructive notice of it, since the property owner in charge of the site has authority to remedy any dangers or defects existing at its own premises.” (See Chowdhury v Rodriguez, 57 AD3d at 130.) At least as to a condition that the contractor did not create, and, therefore, where liability is predicated on a failure to remedy the danger or defect, the contractor must be shown to have “control over the work site.” (See Harsch v City of New York, 78 AD3d 781, 783 [2d Dept 2010].) Other formulations of this element that have appeared in the cases include “control over the premises containing the condition which caused the plaintiffs injury” (see id.), “control over the condition of the work site” (see Van Salisbury v Elliott-Lewis, 55 AD3d 725, 726 [2d Dept 2008]), and “control over the site where the injury occurred” (see Kerins v Vassar Coll., 15 AD3d 623, 625 [2d Dept 2005]).
Not all decisions in “dangerous condition” cases explicitly require “control over the work site.” Rather, liability is imposed upon “contractors who either created a dangerous condition or had actual or constructive notice of it.” (See Wein v Amato Props., LLC, 30 AD3d 506, 507 [2d Dept 2006]; see also Nankervis v Long Is. Univ., 78 AD3d at 800; Bradley v Morgan Stanley & Co., Inc., 21 AD3d 866, 868 [2d Dept 2005]; Linares v United Mgt. Corp., 16 AD3d 382, 384 [2d Dept 2005].) This court is not aware of any explanation for the discrepancy, nor of any explanation or elaboration of the element “control over the work site.” Presumably it is somehow different than the requirement in “methods and means” cases that the contractor “had the authority to supervise or control the performance of the work” (see Ortega v Puccia, 57 AD3d at 61).
“[A] basic, underlying ground for the imposition of any liability under . . . the common law is the authority of the defendant to remedy the dangerous or defective condition at issue.” (Chowdhury v Rodriguez, 57 AD3d at 129-130; see also Russin v Louis N. Picciano & Son, 54 NY2d 311, 317 [1981] [“authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition” (emphasis added)].) Sufficient “authority” has been found where the defendant could “prevent the creation of the unsafe condition or plaintiff’s exposure to it” (see Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 353 [1998] [emphasis added]; see also Fassett v Wegmans Food Mkts., Inc., 66 AD3d 1274, 1277 [3d Dept 2009] *670 [“authority to stop the work”]; Beyea v Malcolm Pirnie, Inc., 298 AD2d 940, 940-941 [4th Dept 2002] [same]). It would appear, therefore, that whatever the formulation of the element “control over the work site,” the focus must be on the ability to prevent plaintiffs injury.
One final question that must be addressed concerning the element “control over the work site” for purposes of liability in a “dangerous condition” case relates to the situation where the contractor allegedly created the condition. A few opinions state that a contractor may be liable in common-law negligence “if it has control over the work site, and either created, or had actual or constructive notice of, the dangerous condition.” (See Harsch v City of New York, 78 AD3d at 783; see also Bruno v Board of Educ. of Cent. School Dist. #5, 74 AD3d at 1115; Martinez v City of New York, 73 AD3d 993, 998 [2d Dept 2010].) The formulation is problematic in that it suggests that “control over the work site” must be established even where the contractor created the dangerous condition, and not only where the contractor failed to remedy it.
The formulation appears to have first been used in Martinez v City of New York (73 AD3d 993 [2010]), and neither in Martinez, nor any of the subsequent opinions in which the formulation appears, is there citation to any opinion prior to Martinez that supports it. Indeed, as is apparent from the authority cited above, “control over the work site” had not, prior to Martinez, been stated as a condition to liability where the contractor has created the condition. Even as to a subcontractor, it was stated that “[i]n order for liability to attach . . . under a theory of common-law negligence, ... [a] contractor must have created or had have [sic] actual or constructive notice of the defective condition which caused the accident.” (See Paladino v Society of N.Y. Hosp., 307 AD2d 343, 345 [2d Dept 2003]; see also Temperino v DRA, Inc., 75 AD3d 543, 545 [2d Dept 2010]; Barnes v DeFoe/Halmar, 271 AD2d 387, 388 [2d Dept 2000]; Maggi v Innovax Methods Group Co., 250 AD2d 576, 578 [2d Dept 1998].)
Subsequent to Martinez, moreover, the Second Department has held that “[a]n award of summary judgment in favor of a subcontractor dismissing a negligence cause of action is improper where the ‘evidence raise[s] a triable issue of fact as to whether [the subcontractor’s] employee created an unreasonable risk of harm that was the proximate cause of the injured plaintiffs injuries.’ ” (See Erickson v Cross Ready Mix, Inc., 75 AD3d 519, 523 [2d Dept 2010], quoting Marano v Commander *671 Elec., Inc., 12 AD3d 571, 572-573 [2d Dept 2004].) And it has held that “[i]n order for [a general contractor] to prevail on [a] motion for summary judgment, it had to show that it neither created the dangerous condition nor had actual or constructive notice of it within a reasonable time to correct it.” (See Nankervis v Long Is. Univ., 78 AD3d at 800.)
Imposing liability on a contractor who creates a dangerous condition on a construction site, without further condition or qualification, is consistent with, if not required by, the line of authority represented by Espinal v Melville Snow Contrs. (98 NY2d 136 [2002]), which imposes liability on a contracting party generally that “[e]xacerbat[es] or creat[es] a dangerous condition” (see id. at 143).
All considered, the rule seems to be that a contractor on a construction site will be liable for an injury caused by a dangerous condition on the site where it created the condition, or where, with sufficient control over the conditions on the site, the contractor failed to remedy the dangerous condition, or to prevent the injured worker’s exposure to it, within a reasonable time after the contractor had actual or constructive notice of the condition. That is the rule that will be applied on the pending motions.
Stateside
Turning, then, to the pending motions, beginning with Stateside’s motion for summary dismissal of plaintiffs verified complaint as against it, as well as dismissal of any cross claims. Stateside was hired by D.E Facilities, the general contractor, to perform “general carpentry work” and “dumpster service” for the construction project at One West 39th Street (see attorney affirmation of John E Bonanno, Esq. 11 15). Initially, until September or early October 2005, Stateside’s services were provided pursuant to an accepted bid for the work for specified numbers of containers, laborers, and weeks. Thereafter, Stateside’s services were provided on an “as needed basis” in response to specific requests by D.E Facilities “to remove construction debris and garbage” (see id. If 16).
In an affidavit, John Bonanno, Stateside’s vice-president at the time of plaintiffs alleged fall, asserts that during the “as needed” period D.E Facilities would request “container service” and Stateside would send a laborer; D.E “would then instruct and direct the laborer as to what areas needed to be cleaned, and the applicable subcontractor working at the target area would also instruct Stateside laborers as to what items were *672 garbage and what items were not garbage.” (See affidavit of John Bonanno 1i 6.)
Mr. Bonanno asserts further that “none of the work performed by Stateside on this project consisted of any Stateside employee cutting pipe or using any pipe, including the type of pipe described by plaintiff as the cause of his trip and fall injury”; that “Stateside employees were not working on the 10th Floor of One West 39th Street on November 14, 2005”; and that “from review of the purchase orders,” “Stateside employees did not work past normal working hours of 7:00 am to 3:00 pm at the worksite on November 14, 2005.” (See id. 1i1i 9, 11.)
Attached as an exhibit are “[c]opies of all purchase orders issued by Stateside for this project” (see id. 1i 5), including an extra work ticket for November 14 that merely describes the work as “Laborer — Provide clean-up,” and indicates that a laborer worked seven hours on that date. Neither Mr. Bonanno nor anyone else renders these “purchase orders” admissible as evidence. (See Whitfield v City of New York, 48 AD3d 798, 799 [2d Dept 2008], affg 16 Misc 3d 1115[A], 2007 NY Slip Op 51433[U] [Sup Ct, Kings County 2007].)
Assuming that, properly supported, Mr. Bonanno’s statement that “Stateside employees were not working on the 10th Floor of One West 39th Street on November 14, 2005” would be sufficient to establish prima facie that Stateside neither created the dangerous condition that allegedly caused plaintiffs fall, nor had actual or constructive notice of the condition, the statement is of no probative value. Unlike his assertion as to the hours worked on November 14, 2005, Mr. Bonanno does not “indicate the sources (e.g., documents he may have searched or reviewed, or persons he consulted) of his familiarity with the construction project at issue, or the company’s purported lack of involvement with same” on the 10th floor on that date (see Barraillier v City of New York, 12 AD3d 168, 169 [1st Dept 2004]). “Where an officer’s knowledge has been obtained either from unnamed and unsworn employees or unidentified and unproduced work records, the affidavit lacks any probative value.” (See Dempsey v Intercontinental Hotel Corp., 126 AD2d 477, 479 [1st Dept 1987].)
Nor does any other “evidence” cited by Stateside carry its prima facie burden on this motion. Whether or not Stateside made any use of pipe in its work, the pipe and the cardboard that allegedly covered it could presumably have been part of debris or garbage dropped by a Stateside employee. Nor does *673 the departure of Stateside employees at 3:00 p.m. constitute evidence that they could not have created the condition that allegedly caused plaintiff to fall at 6:00 p.m. without some further evidence that the condition was not present at 3:00 p.m., and Stateside cites none. For the same reason, a 3:00 departure is not sufficient to establish lack of either actual or constructive notice, without evidence from the Stateside laborer who did the work, or other evidence of inspection. (See McPhaul v Mutual of Am. Life Ins. Co., 81 AD3d 609, 610 [2d Dept 2011]; Ames v Waldbaum, Inc., 34 AD3d 607 [2d Dept 2006].)
Although not necessary to denial of Stateside’s motion, the court also notes that Stateside does not show prima facie that it did not have control of the injury-producing condition on the site. Notwithstanding any need for direction from D.E Facilities or the individual subcontractors “as to what items were garbage and what items were not garbage” (see affidavit of John Bonanno 1Í 6), Stateside’s job was to remove garbage, and Stateside points to no evidence that the cardboard and pipe that allegedly caused plaintiff to fall were not “garbage.”
Finally as to Stateside, it seeks dismissal of all “cross-claims and counter-claims” asserted against it (see notice of motion for summary judgment dated Dec. 3, 2010; attorney’s affirmation of John E Bonanno, Esq. lili 12, 19, 21), but does not point to any pleading that asserts a cross claim or counterclaim against it. In any event, since Stateside has failed to establish its freedom from fault, it would not be entitled to dismissal of any claim against it for common-law indemnity or contribution. (See Astarita v Flintlock Constr. Servs., LLC, 69 AD3d at 889.) As to any claim for contractual indemnification, Mr. Bonanno’s assertion that “none of the agreements entered into with D.P. contained any indemnification language” (see affidavit of John Bonanno 1110) is too indefinite to have sufficient probative value, particularly in the absence of evidence in admissible form that purports to establish the “agreements entered into with D.E”
Since Stateside fails to establish prima facie that it is entitled to judgment as a matter of law, the opposition papers need not be considered. (See Bruno v Board of Educ. of Cent. School Dist. #5, 74 AD3d at 1115.)
Jordan Daniels
Jordan Daniels did electrical work on the 10th floor at One West 39th Street that continued, at least of some sort, through November 14, 2005, the date of plaintiffs alleged fall. Jordan *674 Daniels contends that “Plaintiffs Claim and All Cross-Claims Against Jordan Daniels must be Dismissed Because there is no evidence that Jordan Daniels Created or had Notice of the Alleged Dangerous Condition.” (See affirmation in support of Robert P. Siegel, Esq. at 14.) A substantial part of Jordan Daniels’s argument consists of statements that there is “no evidence” (see id. 11 39), or “nothing in the testimony or evidence” (see id. HIT 39, 42), or “no testimony or evidence” (see id. 1TH 39, 40, 42, 44) to support some fact or proposition.
“A party does not carry its burden in moving for summary judgment by pointing to gaps in its opponent’s proof, but must affirmatively demonstrate the merit of its claim or defense.” (See Velasquez v Gomez, 44 AD3d 649, 650-651 [2d Dept 2007], quoting George Larkin Trucking Co. v Lisbon Tire Mart, 185 AD2d 614, 615 [4th Dept 1992] [internal quotation marks and brackets omitted]; see also Fotiou v Goodman, 74 AD3d 1140, 1141 [2d Dept 2010]; Vittorio v U-Haul Co., 52 AD3d 823 [2d Dept 2008].)
Putting aside the ineffective rhetorical flourishes, Jordan Daniels relies on some deposition testimony that the court has determined to be inadmissible on these motions (namely, the testimony of witnesses for D.P Facilities), and on a disclosure response and response to a notice to admit by D.P Facilities that are not shown to be admissible in evidence against any party other than D.P Facilities. There is also, however, the admissible deposition testimony of Eugene Daniels, a witness for Jordan Daniels.
Eugene Daniels, president of Jordan Daniels at pertinent times for this action, testified that on November 14, 2005 Jordan Daniels had one employee on the 10th floor at One West 39th Street, doing “punch list work” (see examination before trial of Eugene Daniels at 74), which apparently included wiring for a “site scan system” (see id. at 78-81). Mr. Daniels was “not sure” what a “site scan system” is. (See id. at 80.) Indeed, he testified, “I’m not sure what he [the Jordan Daniels employee] was doing because pipe wasn’t on that floor.” (See id. at 74-75.) Mr. Daniels did not recall the last time he was on the 10th floor before the job was completed, or whether he was there at all in November 2005.
The testimony of Eugene Daniels cannot establish prima facie that Jordan Daniels did not create the dangerous condition that allegedly caused plaintiff to fall, since Mr. Daniels did not testify to personal knowledge of the work performed by the *675 Jordan Daniels employee on November 14, 2005, nor did he testify to a source of his information that is shown to be admissible evidence. (See Barraillier v City of New York, 12 AD3d at 169; Dempsey v Intercontinental Hotel Corp., 126 AD2d at 479.) Jordan Daniels makes no showing that it did not have sufficient control of the work site on November 14, 2005 to have prevented the dangerous condition or plaintiffs exposure to it, and no showing that it did not have actual or constructive notice of the condition. There is no evidence by deposition testimony or by affidavit from the Jordan Daniels employee who was on site that day.
To the extent that Jordan Daniels’s motion seeks dismissal of any cross claims asserted against it, it must be denied primarily for the same reasons as Stateside’s motion for the same relief. As to D.E Facilities, Eugene Daniels testified that a single-page purchase order constituted the contract between D.E Facilities and Jordan Daniels for the latter’s work at a price of $1,770,000; and based on the purchase order Jordan Daniels contends that there was no agreement that Jordan Daniels would indemnify D.E Facilities. But the purchase order states, “AIA contract to be issued in addition to this order,” and that Jordan Daniels was to “furnish [an] insurance certificate naming DEF and HSBC as additional insured and hold harmless.”
Jordan Daniels points to no evidence from Eugene Daniels or otherwise as to whether the parties understood the insurance and hold harmless provision as an agreement to indemnify, nor any specific evidence that an “AIA contract” was not “issued,” or that the AIA contract was not intended by the parties to be part of the parties’ agreement (perhaps with an indemnity provision) whether “issued” or not. Jordan Daniels does not make any showing that, as a matter of law, the insurance and hold harmless provision cannot be understood as an agreement to indemnify.
Since Jordan Daniels does not establish prima facie that it is entitled as a matter of law to dismissal of plaintiffs verified complaint or any cross claim asserted against it, the Jordan Daniels motion must be denied.
HSBC
With its motion, HSBC seeks summary judgment for “contractual identification, and/or common law indemnification, and/or contribution, and/or breach of contract” as against defendant D.E Facilities, pursuant to cross claims asserted by HSBC in its verified answer. (See notice of motion for summary judgment *676 dated Dec. 6, 2010; verified answer 1Í1Í 84-88.) HSBC and D.E Facilities are parties to an Architectural/Engineering Service Agreement dated July 21, 2005 that includes provisions on indemnification (section XIII) and insurance (section XIV).
Except with respect to an agreement to defend that appears in the indemnification provision, HSBC makes no showing that D.E Facilities breached their Service Agreement. Indeed, HSBC includes among its motion papers evidence that D.E Facilities complied with the insurance provision.
The indemnification provision requires that D.E Facilities indemnify, defend, and hold harmless HSBC with respect to any claim for personal injury
“arising in connection with the work or services rendered or performed, and/or materials or premises supplied by [D.E Facilities], or any of its subcontractors, employees, agents, servants or invitees to HSBC or which may be caused by any act, negligence or default whatever of [D.E Facilities], its subcontractors, employees, agents, servants or invitees.”
The court assumes for purposes of this motion that the contractual obligations apply to any act or omission of D.E Facilities or any subcontractor, whether negligent or not. This appears to be the understanding of D.E Facilities. (See affirmation in opposition to motion for summary judgment by defendant HSBC North America, Inc. 1Í 5.)
Putting aside, again, the deposition transcripts that the court has found inadmissable as evidence, HSBC’s motion is supported by the deposition testimony of two HSBC witnesses, Richard Tedaldi, a senior vice-president, and Ronald Winchester, HSBC’s project manager. This evidence is insufficient to establish prima facie that HSBC is entitled to judgment as a matter of law on its cross claims against D.E Facilities for either common-law or contractual indemnity.
A party who is itself negligent cannot obtain either common-law or contractual indemnification for injury caused by its negligence. (See Mott v Tromel Constr. Corp., 79 AD3d 829, 831-832 [2d Dept 2010]; Martinez v City of New York, 73 AD3d at 999; Stouraitis v Long Is. R.R., 269 AD2d 589, 590 [2d Dept 2000].) A claim for contribution assumes the negligence of the party seeking it, and necessarily requires an allocation at trial of respective fault. In order to succeed on this motion, therefore, HSBC must establish prima facie that it was not negligent in any manner that contributed to plaintiffs alleged fall.
*677 As demonstrated above, a property owner’s liability in a “dangerous condition” case is “predicated upon evidence of the owner’s creation of the condition or actual or constructive notice of it” (see Chowdhury v Rodriguez, 57 AD3d at 130). Assuming that HSBC has established prima facie that it did not create the condition that allegedly caused plaintiff to fall, HSBC has not shown, even on a prima facie basis, that it did not have actual or constructive notice of its existence. HSBC points to no testimony by either Richard Tedaldi or Ronald Winchester that neither of them, nor any other employee or agent of HSBC, was present on the 10th floor at One West 39th Street on November 14, 2005. The only material testimony noted is that “Winchester could not recall if he observed construction debris on the floor during any walk throughs” (see affirmation in opposition to motion for summary judgment by defendant HSBC North America 116).
As to the claim for contractual indemnification, since neither HSBC nor any other party has established which party or parties, if any, created the dangerous condition that allegedly caused plaintiff to fall, there is no basis for the court to determine that the condition was created by D.E Facilities or one of its “sub-contractors, employees, agents, servants or invitees.” The court would only note further in this connection that neither defendant/third-party plaintiff Jones Lang nor third-party defendant Collins Building Services, Inc. appears to be properly so described.
Collins
Finally, third-party defendant Collins moves for summary dismissal of the third-party complaint of defendant/third-party plaintiff Jones Lang, as well as “all cross-claims or other claims which may be deemed to exist in connection herewith” against Collins. (See notice of motion for summary judgment dated Dec. 4, 2010.) Since Collins does not identify any such “cross-claims or other claims,” the motion as to them is denied.
In its third-party complaint, Jones Lang alleges causes of action for common-law indemnification and contribution, contractual indemnification, and breach of contractual insurance provisions. Jones Lang and Collins are parties to a Service Contractor Agreement dated December 24, 2003. Again, Jones Lang was the facility manager for One West 39th Street, and plaintiff was an employee of Collins when, on November 14, 2005, he allegedly fell during the course of his employment.
The common-law duty to provide a safe construction site for workers applies to owners, contractors, “and their agents.” (See *678 Gasques v State of New York, 59 AD3d 666, 667 [2d Dept 2009], affd 15 NY3d 869 [2010]; see also Fuchs v Austin Mall Assoc., LLC, 62 AD3d 746, 747 [2d Dept 2009] [“owner or manager”].) Collins does not show that Jones Lang was not the owner’s agent for this purpose, nor that Collins was, therefore, not an agent. Like the owner, an agent would have “authority to remedy any dangers or defects existing at [the] premises” (see Chowdhury v Rodriguez, 57 AD3d at 130).
An exhibit A to the Service Contractor Agreement between Collins and Jones Lang details Collins’s “Contractor Duties,” and includes among the “Daily Porter Duties” to “[p]olice and remove rubbish from basement, corridors, stairways, setbacks and roof areas” and “[r]emove all trash and debris from freight elevator lobbies.” No provision specifically addresses construction in the building or construction debris. But Collins cites to deposition testimony of an HSBC witness, Ronald Winchester, and a Jones Lang witness, Michael Ludwikowski, as well as two of its own witnesses, Miguel Valentin and John Baden, to the effect that Collins generally did not have the responsibility for clearing construction debris. That responsibility, according to the deponents, was shared by the general contractor, D.E Facilities, and its subcontractors, unless something was specifically designated and marked as “trash.”
Collins’s showing, of course, depends upon the assumption that the cardboard and pipe that allegedly caused plaintiffs fall were in fact construction debris, since no determination that they were has been made by the court on any of these motions. Presumably, an admission by plaintiff that he fell on construction debris would suffice for purposes of Collins’s motion, but Collins only points to plaintiffs deposition, when he was asked to speculate as to the sources of the cardboard and pipe.
Even if, however, the offending cardboard and pipe were construction debris, and assuming that Collins’s workers were required to ignore obvious tripping hazards, Collins still fails to make a prima facie showing that it did not create the dangerous condition. Collins points to no evidence from the employee(s) who were responsible for cleaning the 10th floor on November 14, 2005 that the cardboard and pipe were not seen, or, if seen, were ignored because of the absence of a “trash” marking. Indeed, Collins acknowledges that it was required to remove designated “trash,” but provides no evidence that the cardboard and pipe were not part of a load of “trash” that was negligently dropped.
*679 Collins’s showing suffers, therefore, from the same evidentiary deficiency that pervades the other motions, that is, that despite the extensive disclosure conducted on this hardly unique trip-and-fall, including an amazing three deposition sessions with plaintiff, there is virtually no testimony on personal knowledge, by affidavit or otherwise, as to what exactly each of these defendants did or did not do, or saw or did not see, on the 10th floor at One West 39th Street on November 14, 2005. Given the extraordinary amount of paper filed on these motions, the old adage about trees and the forest seems particularly appropriate.
All of the motions are denied. The motion of Jones Lang is untimely, and none of the other defendants has shown prima facie that it is entitled to judgment as a matter of law.