OPINION OF THE COURT
Jack M. Battaglia, J.
On August 13, 2009, while high on crack cocaine, defendant Yolanda Silvera drove a vehicle, owned by defendant Douglas Kruger, into a portion of Rockaway Boulevard that was under construction, striking plaintiff Robert W. Keller, who was working as a “flagman” for defendant Tully Construction Co. Inc., and striking plaintiff Michael R. Hudson, who was a driver/ equipment operator employed by nonparty Durso Transportation Corp. Nonparty David Kruger, defendant Douglas Kruger’s son, was a passenger in the vehicle operated by Yolanda Silvera. The roadway was owned by the State of New York, who entered into a contract with defendant Lockwood, Kessler & Bartlett, *724 Inc. to serve as a consultant engineer, and entered into a contract with defendant Tully Construction Co. Inc. to serve as general contractor for the roadwork.
In the verified complaint, plaintiffs allege, among other things, that defendant Yolanda Silvera was negligent and reckless in her operation of the vehicle, and that she operated the vehicle with the permission of defendant Douglas Kruger. Plaintiffs further allege, among other things, that defendants Tully and Lockwood were negligent and violated Labor Law § 241 (6) in failing to, among other things, take adequate measures, including proper placement of attenuator trucks, to prevent vehicles from entering into the area of the roadway that was under construction.
Plaintiffs’ Motion for Summary Judgment as against Defendants Silvera and Kruger
Plaintiffs first contend that they are entitled to summary judgment against defendant Yolanda Silvera based upon collateral estoppel because Silvera’s “plea allocution and Certificate of Disposition make it perfectly clear that she recklessly operated the subject vehicle and, that in doing so, she caused serious physical injury to Plaintiffs.” In support, plaintiffs proffer, among other things, a certificate of disposition indictment from Supreme Court, Queens County, indicating that defendant Yolanda Silvera pleaded guilty to Penal Law § 120.10 and was sentenced on March 11, 2011 to nine years’ imprisonment. Plaintiffs submit a copy of the transcript of Yolanda Silvera’s plea allocution, in which she admits that by pleading guilty, she is admitting
“that on August 13 of 2009 at 150th Road and Rock-away Boulevard in Queens, that [she was] driving a vehicle that [she] had smoked crack before that and that because of this reckless operation of the vehicle that [she] ended up causing a serious physical injury to somebody at that location.”
As a result, plaintiffs sufficiently demonstrate prima facie entitlement to partial summary judgment on the issue of liability as against defendant Yolanda Silvera. (See Blaich v Van Herwynen, 37 AD3d 387 [2d Dept 2007]; Wagman v Kandekore, 243 AD2d 628 [2d Dept 1997].)
In opposition, defendant Silvera does not point to any evidence demonstrating an issue of fact as to her liability. Accordingly, the branch of plaintiffs’ motion for an order granting them partial summary judgment on the issue of liability as against defendant Yolanda Silvera is granted.
*725 Plaintiffs also contend that they are entitled to partial summary judgment on the issue of liability as against defendant Douglas Kruger, the owner of the vehicle, based upon Vehicle and Traffic Law § 388. In support, plaintiffs proffer a copy of Douglas Kruger and Yolanda Silvera’s answer to verified complaint and cross claim, which does not address plaintiffs’ allegation in their verified complaint that the vehicle was operated by defendant Silvera with Douglas Kruger’s permission. As such, the allegation is deemed admitted. (See CPLR 3018 [a]; Miller v Bah, 74 AD3d 761, 762 [2d Dept 2010].) As a result, plaintiffs demonstrate prima facie entitlement to summary judgment pursuant to Vehicle and Traffic Law § 388, which imposes liability upon the owner of the vehicle based upon the negligence of the driver. Vehicle and Traffic Law § 388, which is intended to have a “financially responsible defendant where a vehicle, being operated with the owner’s permission and consent, causes injury or death,” applies where, as here, allegations include claims of gross negligence or recklessness. (See Lynch-Fina v Paredes, 164 Misc 2d 963, 964 [Sup Ct, Queens County 1995].)
Accordingly, the branch of plaintiffs’ motion for an order, pursuant to CPLR 3212, granting them partial summary judgment on the issue of liability as against defendant Douglas Kruger is granted.
Sole Proximate/Superseding Intervening Cause
In their respective motions, defendants Tully and Lockwood contend that, regardless of any negligence on their part, they are entitled to summary dismissal of plaintiffs’ verified complaint as against them on the ground that Silvera’s negligent or reckless operation of the Kruger vehicle was the sole proximate and superseding cause of the impact between the Kruger vehicle and plaintiffs.
“A party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, producing sufficient evidence to demonstrate the absence of any material issue of fact. Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution.” (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003]; see also CPLR 3212; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].)
“In determining a motion for summary judgment, the court *726 must view the evidence in the light most favorable to the non-moving party.” (Stukas v Streiter, 83 AD3d 18, 22 [2d Dept 2011]; Pearson v Dix McBride, LLC, 63 AD3d 895 [2d Dept 2009].) “The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist.” (Stukas v Streiter, 83 AD3d at 23, quoting Kolivas v Kirchoff, 14 AD3d 493, 493 [2d Dept 2005].)
In support of their motion, Tully and Lockwood proffer the deposition testimony of nonparty David Kruger that he and defendant Silvera had smoked crack prior to the accident; that at some time prior to the accident, he was operating the vehicle (the Kruger vehicle), which was owned by his father, defendant Douglas Kruger, and got lost; that because he was lost, he allowed defendant Silvera to drive the vehicle; that Silvera drove the vehicle erratically by stopping “twenty, thirty feet behind” stop signs, and then “gunned” it through the stop signs; that he was screaming and arguing with her to stop the vehicle and pull over; that when they “got towards the construction site there were just a few stopped cars at the red light”; that there were two lanes of traffic; that they were in the left lane; that “at the last second,” Silvera swerved the vehicle to the right “and there was a barrel, barrel, gentleman and we stopped abruptly”; that just prior to veering to the right, traffic was stopped at a light ahead.
Tully and Lockwood submit a copy of the deposition testimony of Yolanda Silvera, to the effect that at the time of the accident, she was high on crack cocaine and was not aware of the manner in which she operated the vehicle, and that she was not aware that she had even entered a construction zone.
Tully and Lockwood submit an affidavit of nonparty Henry Henry, who avers that, at the time of the accident, he was operating a company van in the course of his employment, and that he witnessed the accident. He avers that, as he approached Rockaway Boulevard, he observed the Kruger vehicle approaching the same intersection at a high rate of speed and did not appear as though it would stop for the red traffic light for traffic on Rockaway Boulevard; that after the Kruger vehicle passed through the intersection, he proceeded ahead and drove behind the Kruger vehicle; that he noticed that the Kruger vehicle’s brake lights were on while it was accelerating; that the construction zone was clearly visible with road signs, traffic barrels, and good illumination; that Rockaway Boulevard was comprised of *727 three lanes of traffic through the construction zone, that the middle and right lanes were closed, and that all traffic was using the left lane; that as the Kruger vehicle approached the construction zone, it was initially in the middle lane, and it “swerved” into the left lane and then “suddenly swerved” sharply to the right and struck the construction workers; that he only observed one construction worker get struck; that the Kruger vehicle proceeded ahead until it crashed into a large water tank located in the right-most lane; that the Kruger vehicle ran over “approximately three traffic barrels before crashing to a stop.”
Tully and Lockwood also proffer the affidavit of nonparty Noah Reiss, who avers that at the time of the accident, he was driving on Rockaway Boulevard near JFK and witnessed the accident. He avers that “the right lane(s) of traffic was (were) closed and traffic had slowed to about 20 mph”; that “as [he] drove past [sic] the construction zone (which was to [his] right), [he] noticed in [his] passenger-side mirror that [the Kruger vehicle] was coming up quickly from behind and to [his] right”; that he “then looked ahead and to [his] right and observed a flagman standing in the roadway in a closed lane, located to the right of the lane [he] was traveling in”; that the Kruger vehicle “then sped past [his] vehicle very closely on his passenger side” at about 50 miles per hour; that the Kruger vehicle struck traffic barrels and two workers before “coming to rest against a large piece of equipment in the work area, located at least 30 feet further down the roadway from where the two workers were struck.”
In the seminal case on proximate cause in New York, Derdiarian v Felix Contr. Corp. (51 NY2d 308 [1980]), the “operator of a motor vehicle, who failed timely to ingest a dosage of medication, suffered an epileptic seizure and his vehicle careened into an excavation site,” “crashed through a single wooden horse-type barricade put in place by the contractor and struck” the plaintiff who was an employee of a subcontractor. (See id. at 312.) During the trial, the plaintiff’s expert in traffic safety testified that the defendant contractor departed from “the usual and accepted method of safeguarding the workers” by not erecting a barrier around the excavation. (See id. at 313.) The expert testified that “a barrier, consisting of a truck, a piece of heavy equipment or a pile of dirt, would keep a car out of the excavation and protect workers from oncoming traffic,” and that the “barrier should cover the entire width of the excavation.” (See id.)
*728 In Derdiarian, the defendant contractor sought to set aside a jury verdict against it on the ground that, as a matter of law, the driver’s negligence was a superseding cause that interrupted the link between the contractor’s negligence and the plaintiffs injuries. (See id. at 316.) The Court of Appeals rejected the contractor’s argument, and held that “[t]he finder of fact could have concluded that the foreseeable, normal and a natural result of the risk created by [the contractor] was the injury of a worker by a car entering the improperly protected work area.” (See id.) In this regard, the Court of Appeals noted that it was not “decisive that the driver lost control of the vehicle,” and that “[t]he precise manner of the event need not be anticipated.” (See id.) Moreover, it held that “[a]n intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent.” (See id.)
Here, as in Derdiarian v Felix Contr. Corp. (51 NY2d 308 [1980]), the fact that a driver lost control, or never had control, of her vehicle cannot serve as a superseding cause, and relieve the contractors of responsibility, where the risk of an out-of-control vehicle entering the work site is the very same risk that would render the contractors negligent.
The cases cited by defendants Tully and Lockwood are clearly distinguishable on their facts, and none of the cases cited by them, other than Derdiarian, involve claims of failure to properly protect roadway construction sites from oncoming vehicles. As such, Tully and Lockwood fail to establish prima facie that Silvera’s negligent or reckless operation of Kruger’s vehicle was the sole proximate and superseding cause of the accident.
Accordingly, the branches of defendants Tully’s and Lockwood’s motion for summary dismissal of plaintiffs’ verified complaint as against them on the ground that defendant Silvera’s negligent and reckless operation of the vehicle was, as a matter of law, the superseding cause of plaintiffs’ injuries so as to relieve Tully and Lockwood of any responsibility for any negligence on their part is denied.
Labor Law § 241 (6) — Statutory Agent of Owner
Plaintiffs next contend that they are entitled to summary judgment on their cause of action for violation of Labor Law § 241 (6) as against defendants Tully and Lockwood. Labor Law § 241 (6) provides, in pertinent part, as follows:
“All contractors and owners and their agents, except *729 owners of one and two-family dwellings who contract for but do not direct or control the work, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . .
“6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.”
Despite the language in the statute implying that it is only applicable to work in connection with construction or demolition of buildings, the statute “extends to workers involved in, among other things, road construction projects.” (See Gonnerman v Huddleston, 78 AD3d 993, 995 [2d Dept 2010]; see also Mosher v State of New York, 80 NY2d 286, 288 [1992] [state highway repaving project].)
Since defendant Lockwood is neither an owner nor general contractor, it can only be held liable under Labor Law § 241 (6) if it is shown to be a statutory agent of the owner or general contractor. (See Delanoy v City of White Plains, 83 AD3d 773, 774 [2d Dept 2011]; Lopes v Interstate Concrete, 293 AD2d 579, 579 [2d Dept 2002].) “A party is deemed to be an agent of an owner or general contractor under the Labor Law when it has the ability to control the activity which brought about the injury.” (Guclu v 900 Eighth Ave. Condominium, LLC, 81 AD3d 592, 593 [2d Dept 2011] [internal quotation marks omitted]; see also Lopes v Interstate Concrete, 293 AD2d at 579.)
Here, in support of their contention that Lockwood is the statutory agent of the owner, plaintiffs submit a copy of the contract between Lockwood and the State of New York that is not authenticated, nor shown to be otherwise admissible as evidence on this motion. (See Prince, Richardson on Evidence § 9-101 [Farrell 11th ed 1995]; see also NYCTL 1998-2 Trust v Santiago, 30 AD3d 572, 573 [2d Dept 2006] [contract]; People v Butler, 2 AD3d 1457, 1458 [4th Dept 2003] [police officer’s writing].)
Even considering the contract, which is also submitted by Lockwood, plaintiffs only point to a portion of it that requires, in boilerplate fashion, that “[inspectors designated as the responsible person in charge of work zone traffic control” have *730 certain training. However, plaintiffs do not point to a provision in the contract requiring Lockwood to provide an inspector designated as the responsible person in charge of work zone traffic control. Even assuming the existence of a provision in the contract requiring Lockwood to inspect work zone traffic control, “[t]he performance of on-site inspections [of the construction work] does not constitute such supervision and control” over the activity resulting in plaintiffs injury so as to form the predicate for liability as a statutory agent of the owner. (See Harvey v Sear-Brown Group, 262 AD2d 1006, 1006 [4th Dept 1999]; see also Hernandez v Yonkers Contr. Co., 306 AD2d 379, 380 [2d Dept 2003].) It is not for the court to review a voluminous double-sided contract in order to find other provisions therein that may support a summary judgment movant’s position. As such, plaintiffs fail to point to any provision in the contract requiring Lockwood to control the activity that brought about the injury.
Plaintiffs also point to the deposition testimony of Lockwood’s employee Pooyan Tafreshi that Lockwood represented the State at the construction site; and that as of August 13, 2009, if he, as a safety inspector or the chief inspector, saw a safety violation or issue at this project, he had the authority to shut down the work. However, this testimony, which does not describe the particular hypothetical safety violation, does not alone establish prima facie that Tafreshi or that anyone else from Lockwood had the ability to control the activity that brought about the injury. As a result, plaintiffs fail to establish prima facie that Lockwood was a statutory agent such that it can be held liable for violation of Labor Law § 241 (6).
However, it should be noted that testimony that Lockwood had authority to stop work may be some evidence that it was a statutory agent of the owner so as to create an issue of fact as to whether it was a statutory agent. (See e.g. Barraco v First Lenox Terrace Assoc., 25 AD3d 427, 428 [1st Dept 2006].)
Accordingly, the branch of plaintiffs’ motion for summary judgment on their Labor Law § 241 (6) cause of action as against Lockwood is denied.
In opposition and in support of its own motion for summary judgment, Lockwood contends, among other things, that it is entitled to summary dismissal of plaintiffs Labor Law § 241 (6) cause of action on the ground that it was not a statutory agent of the owner. In support of its motion, Lockwood proffers, among other things, an affidavit of Pooyan Tafreshi who avers that on *731 August 13, 2009, he was an inspector employed by Lockwood at the subject site; that Lockwood was hired as a “consultant to provide inspection services on the project including job quality and MPT [maintenance and protection of traffic] compliance”; that Tully had [an] MPT crew setting up lane closures; that Lockwood does not provide Tully with materials supplies, equipment, or labor for implementing the MPT plan, and that its role is strictly limited to “inspection for MPT compliance”; and that the MPT plan is “designed and provided by the NYS Department of Transportation.” However, Tafreshi’s affidavit does not address whether Lockwood had the ability to control the activity, i.e., the lane closure and control of traffic, including whether Lockwood was permitted to shut down the work because of safety concerns with a lane closure. Indeed, as noted above, Tafreshi testified at his deposition that Lockwood represented the State at the construction site and that, as a Lockwood representative, he had the authority to shut down work for safety violations.
Lockwood also points to plaintiff Robert W. Keller’s deposition testimony, to the effect that his work was supervised and controlled by Tully. Lockwood points to plaintiff Michael R. Hudson’s deposition testimony, to the effect that his work was supervised and controlled by his employer at Durso and by Tully. Lockwood also points to the deposition testimony of William Ryan of Tully, to the effect that Tully controlled the execution of the maintenance and protection of traffic plan. However, such testimony does not establish that Lockwood also did not have the ability to control plaintiffs’ work.
Lockwood submits a copy of its contract with the State of New York Department of Transportation. The contract contains a provision that “[individual inspectors must be instructed relative to the safety concerns for construction operations they are assigned to inspect to protect their personal safety and to ensure they are prepared to recognize and address any CONTRACTOR oversight or disregard of project safety requirements.” It also provides, “CONSULTANT is responsible for monitoring the Contractor’s and Subcontractor’s efforts to maintain traffic and protect the public from damage to person and property within the limits of, and for the duration of, the CONTRACT.” Lockwood does not point to any provisions or point to any evidence of its practice with respect to the manner it fulfills the contractual obligation to “address any CONTRACTOR oversight or disregard of project safety requirements,” and therefore, *732 does not show that it does not have authority to control or shut down the work if it makes a determination that Tully, the general contractor, failed to comply with the project safety requirements.
As a result, Lockwood fails to demonstrate prima facie that it was not a statutory agent of the owner such that it cannot be held liable pursuant to Labor Law § 241 (6). Accordingly, the branch of defendant Lockwood, Kessler & Bartlett, Inc.’s motion for summary dismissal of plaintiffs’ Labor Law § 241 (6) cause of action on the ground that it was not a statutory agent of the owner is denied.
Labor Law § 241 (6) — 12 NYCRR 23-1.29
In their motion for summary judgment, plaintiffs contend that they are entitled to summary judgment on their Labor Law § 241 (6) cause of action as against defendants Tully and Lockwood based upon violation of Industrial Code (12 NYCRR) § 23-1.29. Since there exists an issue of fact as to whether defendant Lockwood is a statutory agent of the owner, the branch of plaintiffs’ motion for summary judgment on its Labor Law § 241 (6) cause of action as against Lockwood must be denied. However, in opposition to plaintiffs’ motion, and in their respective motions, Tully and Lockwood also contend that plaintiffs’ Labor Law § 241 (6) cause of action must be dismissed because 12 NYCRR 23-1.29 is not applicable to the facts of this case, and, in any event, was not violated.
“To recover on a cause of action alleging a Labor Law § 241 (6) violation, a plaintiff must establish the violation of an Industrial Code provision which sets forth specific safety standards” (Cun-En Lin v Holy Family Monuments, 18 AD3d 800, 802 [2d Dept 2005]), and that the Industrial Code provision is applicable to the facts of the case (see Ferrero v Best Modular Homes, Inc., 33 AD3d 847, 851 [2d Dept 2006]). Here, plaintiffs allege that defendants Lockwood and Tully violated 12 NYCRR 23-1.29 (a) and (b) of the Industrial Code, which provide as follows:
“(a) Whenever any construction, demolition or excavation work is being performed over, on or in close proximity to a street, road, highway or any other location where public vehicular traffic may be hazardous to the persons performing such work, such work area shall be so fenced or barricaded as to direct such public vehicular traffic away from such area, or such traffic shall be controlled by *733 designated persons.
“(b) Every designated person authorized to control public vehicular traffic shall be provided with a flag or paddle measuring not less than 18 inches in length and width. Such flag or paddle shall be colored fluorescent red or orange and shall be mounted on a suitable hand staff. Such designated person shall be stationed at a proper and reasonable distance from the work area and shall face approaching traffic. Such person shall be instructed to stop traffic, whenever necessary, by extending the traffic flag or paddle horizontally while facing the traffic. When traffic is to resume, such designated person shall lower the flag or paddle and signal with his free hand.”
In support of their respective motions, plaintiffs, Tully and Lockwood all proffer the deposition testimony of plaintiff Robert Keller who testified that he was employed by Tully as a laborer, which included working in MPT; that MPT involves closing lanes and working as a flagman; that on the date of the accident, he reported to work at 7:30 p.m. for the night shift, and was assigned to do MPT; that he and two other MPT workers placed signs and barrels; that after setting up the signs and barrels, he was assigned to work as the flagman; that he was provided with a reflective vest, a hard hat, and a paddle that had a reflective “stop” sign on one side and a “slow” sign on the other; that the roadway had four lanes of traffic; that the lane closest to the curb was “lane one”; that the lane adjacent to it closer to the median was “lane two”; that the next lane closer to the median was “lane three”; and that the lane abutting the median was “lane four”; that when he first started “flagging,” only lanes one and two were closed; that there were two attenuator trucks positioned in lane one, and one attenuator truck positioned in lane two; that the attenuator trucks were located “upstream” or in the direction of oncoming traffic; that at first, he was situated in the vicinity of the attenuator trucks in lane two; that at about 10:00 p.m., lane three was closed down by placing barrels in a taper; that the taper was 100 feet long; that after lane three was closed, he stood in the middle of lane three adjacent to where the work was being performed in lanes one and two, which was to his left.
Plaintiff testified that he was told by a foreman named “Manny” to move to that position in the third lane next to where the work was being performed so that he could hear *734 instructions over the noise of the machinery; that only lane four was open to traffic; that he was holding the pole with his right hand; that about a minute before the accident, he was instructed by “Sal” to stop traffic in lane four so that he could move materials with a front-end loader upstream through lane four; that plaintiff was in the process of turning the sign post to stop traffic, and he had his head turned when he heard a coworker call to him to “look . . . out!”; that he saw headlights five feet away, and barrels going up “like bowling pins”; he was pushed out of the way by plaintiff Michael Hudson, and landed in lane four; that the vehicle then veered to the right toward the first lane; and that the accident occurred at about 10:30 p.m. or 10:45 p.m.
Plaintiffs submit the affidavit of Joseph J. McHugh, who avers that he is a registered professional engineer; that he has, among other things, served as resident engineer and project manager of numerous projects involving the New York State Department of Transportation; that he has reviewed documents set forth in his CPLR 3101 (d) disclosure, which include deposition transcripts, contracts relative to the roadway construction project, and photographs; that he also inspected the area and scene of the incident; and that
“at the time of the incident on August 13, 2009 at approximately 10:30-11:00 p.m., good and accepted standards in the engineering and road construction/ reconstruction industry were not complied with in that Defendants . . . failed to provide a reasonably safe lane closure on Rockaway Boulevard as required by the New York State Industrial Code, specifically 23-1.29.”
Specifically, McHugh avers that “[t]he area on Rockaway Boulevard where the incident occurred had four lanes for westbound vehicular traffic, one which was specifically designated as a turn lane for vehicles to make a left turn from Rock-away Bouleveard onto Guy Brewer Boulevard.” McHugh relies on Keller’s testimony that Keller was initially situated in the general vicinity of the attenuator trucks located in lanes one and two; that about 30 minutes prior to the accident, Keller was told to close the third lane of Rockaway Boulevard, which was accomplished by the placement of orange barrels in the third lane in a tapered fashion; that Keller resumed his flagman duties while in the third lane which was closed only with barrels; that five minutes before the accident, Keller was directed *735 to stop all traffic in the fourth lane, which is the “left turn lane,” and. which was the only open lane, so that it could be used by one of the trucks; and that although three lanes were closed, only two lanes had attenuator trucks in place.
McHugh avers that “[a]n attenuator truck is a heavy truck that is typically used during the course of roadway construction projects . . . whose purpose is to prevent vehicular traffic from entering the construction area,” and “is heavy enough and has a large safety cushion that faces oncoming vehicular traffic, so that if a vehicle were to reach a closed lane and hit the attenuator truck, the attenuator truck would not move, thereby protecting the workers located in the area behind the attenuator truck”; that Industrial Code § 23-1.29 (a), “as well as good and accepted standards in the road construction industry as of the date of the incident, required that each lane of vehicular traffic subject to closure have an attenuator truck in it to serve as a barricade, or otherwise be fenced in such a manner that would have prevented a car from entering the lane of travel” where plaintiffs were situated; that “the failure to have an attenuator truck in each of the three lanes that were closed so as to barricade the work site was, in [his] professional opinion, exercised to a reasonable degree of engineering and road safety construction certainty, a proximate cause of both Plaintiffs’ injuries.”
McHugh also avers that it is his “opinion, expressed with a reasonable degree of engineering and road construction safety certainty,” that defendants Tully and Lockwood also violated Industrial Code § 23-1.29 (b) on the ground that “because of an inability to communicate with [Keller], Keller was directed to essentially stand in the work area, or in very close proximity to it, and certainly was not stationed a proper and reasonable distance from it”; and that such violation was “also a proximate cause of the incident.”
In opposition to plaintiffs’ motion, and in support of its own motion, defendant Tully submits the affirmation of Fred Levine, who affirms that he is a licensed professional engineer, as well as an attorney licensed in the State of New York; that “[p]ursuant to Section 619 [of the Work Zone Traffic Control and Maintenance and Protection of Traffic Notes], the State required that an attenuator vehicle be placed in each lane of traffic in which workers were [sic] be performing work”; that there were three lanes of traffic; that work was being performed in lane one and lane two; that “there were left-turn-only lanes that started adjacent to the accident scene”; that Tully was *736 only allowed to close lanes one and two; that Tully closed only lanes one and two and that lane three was always open to traffic; that even assuming that lane three was closed to traffic, “[ejection 619 would not have required that an attenuator truck be positioned in lane three, as no work was being performed in lane three”; that “the requirements for placement of attenuators are promulgated for the protection of workers involved in actual road construction — workers that necessarily cannot pay close attention to traffic approaching the work area, workers that rely on an alert flag person to warn them”; that he concludes, “with a reasonable degree of engineering and construction site safety certainty, that Tully complied with all applicable rules, regulations, codes and the State’s requirements pertaining to the position and use of attenuator/impact vehicles; and that the subject accident was not due to the lack of, improper positioning of, an attenuator truck(s)”; that Industrial Code § 23-1.29 (a) “is for the protection of workers performing roadwork,” and that plaintiff Robert Keller “was not performing roadwork and is not an intended beneficiary of this Rule”; that “the records establishes that the work area was fenced or barricaded so ‘as to direct such public vehicular traffic away from the such area’ ”; that the traffic barrels are channelization devices and “are not intended, nor required, to serve as physical barriers to intrusion into the work area”; that section 23-1.29 (a) requires only that the devices direct traffic away from the work, not serve as a solid physical barrier or fence; and that the barrels thus complied with the rule.
Levine also affirms that Industrial Code § 23-1.29 (b) is not applicable because plaintiff Robert Keller was not controlling traffic at the time of the accident; and that, in any event, he was provided with equipment that complied with the rule; that section 23-1.29 (b) is “clearly intended for the protection of the workers, not the flagger, and there is not [sic] logical basis to conclude that Robert Keller’s placement relative to the work crew had anything to do with the accident”; that he concludes with a “reasonable degree of engineering and construction site safety certainty, that neither Labor law § 241(6) nor § 23-1.29 were violated; and even if [they were violated], such violation was not a proximate cause of the accident.”
“Although New York courts permit expert testimony on the question of whether a certain condition or omission was in violation of a statute or regulation, this rule does not authorize expert testimony regarding the meaning and applicability of the *737 law, which is the province of the court.” (See Franco v Jay Cee of N.Y. Corp., 36 AD3d 445, 448 [1st Dept 2007] [citations omitted].) To the extent that Fred Levine opines as to the meaning and applicability of 12 NYCRR 23-1.29 (a) and (b), such opinions are without any evidentiary value, but are considered solely as legal argument.
Tully proffers the affidavit of William Ryan who avers, among other things, that he is the vice-president of risk management for Tully; that he was present at the scene of the accident shortly before it occurred and soon after it occurred; that he has personal knowledge of the placement of the devices for maintenance and protection of traffic, such as traffic barrels, road construction signs, and attenuator trucks, as well as the position of the flagger, Robert Keller; that he is responsible for making sure that workers are in a safe environment; and that prior to the accident, Robert Keller was positioned in lane two, and that there was an attenuator truck located in lane two. Of note, Ryan also avers that Lockwood was present on the project when work was taking place and inspected Tully’s work to ensure it complied with, among other things, traffic safety and worker safety requirements; and that Lockwood inspected each lane closure.
Lockwood and Tully proffer an affidavit of Salvatore Delligatti, who avers that on the date of the accident, he was an equipment operator for Tully; that he was operating an excavator adjacent to Rockaway Boulevard, “fairly close to the intersection of Rockaway Boulevard and Guy R. Brewer Boulevard”; that “[a]t no time on the night of the accident did [he], or anyone on [his] behalf, request someone, including Robert Keller, to close a lane of traffic of Rockaway Boulevard to allow equipment to be moved upstream . . . using the remaining open lane of traffic, lane three”; that Mr. Keller was not communicating with him prior to or at the time of the accident; that he recalls that “two of three lanes of traffic for Rockaway Boulevard were closed using the standard equipment, traffic barrels and an attenuator truck parked in each of the closed lanes”; that “[approximately 30 minutes to an hour before the accident, [he] observed the [sic] Robert Keller standing in one of the two closed lanes for traffic, approximately 700-800 feet upstream . . . from [his] location.”
Delligatti’s testimony appears to contradict Robert Keller’s testimony that he was instructed by “Sal” to shut down a lane of moving traffic a minute before the accident. However, Lock *738 wood and Tully do not point to any testimony or averment from Delligatti establishing plaintiff Robert Keller’s position within the 30 minutes prior to the accident. William Ryan’s affirmation does not state plaintiffs position at the time of the accident, but only “shortly before” the accident. Plaintiff testified that at about 30 minutes prior to the accident, he changed his position from lane two to lane three, which may be consistent with Delligatti’s testimony that he observed plaintiff in lane one or lane two “approximately 30 minutes to an hour before the accident,” and may be consistent with Ryan’s testimony depending upon the time that Ryan last observed Keller.
Moreover, it should be noted Tully and Lockwood suggest that plaintiff Keller’s testimony that there were four lanes of traffic is in conflict with their position that there were only three lanes of traffic. Plaintiffs, Tully and Lockwood agree that work was being performed in two lanes of traffic, and that there were attenuator trucks in those two lanes. Despite their claim of an inconsistency, however, Tully’s own expert Fred Levine, as well as William Ryan, admits that there were three lanes and “left-turn-only lanes.” Plaintiffs’ expert Joseph J. McHugh includes a left-turn-only lane as one of the four lanes that plaintiff referred to in his deposition testimony. Although William Ryan avers that the left-turn lane was not used for through traffic, Tully and Lockwood do not proffer any evidence that the left-turn-only lane or lanes could not be used as a lane or lanes for through traffic while construction work was being performed in the third lane, and offer no explanation as to why they do not count a left-turn-only lane to be a fourth lane of traffic.
To support their contentions that 12 NYCRR 23-1.29 (a) and (b) were complied with and are not applicable on the facts, Tully and Lockwood cite to Lucas v KD Dev. Constr. Corp. (300 AD2d 634 [2d Dept 2002]). In that case, a construction worker who was assigned to work as a flagman was “struck by a car as he was walking on the street adjacent to the work site towards awaiting concrete trucks.” (See id. at 634-635.) The Second Department determined that “defendants established as a matter of law that they complied with the requirements of 12 NYCRR 23-1.29 (a) and (b) by instructing the injured plaintiff to act as a flagman, and by providing him with an appropriate fluorescent flag.” (See id. at 635.) Notably, the Second Department also noted that the “plaintiffs’ recovery is not barred merely because the injured plaintiff was struck by a car, the very danger he was assigned as flagman to eliminate, because *739 there was an issue of fact as to an independent statutory violation of the Industrial Code provision requiring adequate illumination.” (See id. at 635.)
In Lucas, the Second Department did not specifically describe the plaintiffs’ allegations with respect to 12 NYCRR 23-1.29 (a) and (b). Here, there does not appear to be any dispute that plaintiff Robert Keller was instructed to work as a flagman, and that he had a proper fluorescent flag. Rather, plaintiffs allege that plaintiff Keller was working in an area “where public vehicular traffic may be hazardous,” and that the area was not appropriately “fenced or barricaded as to direct such public vehicular traffic away from such area” in violation of 12 NYCRR 23-1.29 (a). As to these allegations, there appears to be conflicting evidence as to whether at the time of the accident, plaintiff Robert Keller was standing in a lane that did not have an attenuator truck, but had only barrels to direct traffic away from the lane. There is also conflicting expert opinion as to whether, even assuming the truth of plaintiffs testimony that there were only barrels in the lane where he was standing, such barrels would have been sufficient to comply with 12 NYCRR 23-1.29 (a). (See generally McGuinness v Hertz Corp., 15 AD3d 160, 161 [1st Dept 2005] [summary judgment denied on defendant’s motion for summary dismissal of plaintiffs Labor Law § 241 (6) cause of action premised upon violation of 12 NYCRR 23-1.29 (a) where there was a “material issue of fact as to whether the manner in which the barricades were deployed constituted a violation of the regulation, thereby rendering the work site unsafe and proximately causing this plaintiffs injuries”].)
While plaintiffs also claim that Keller was not “stationed at a proper and reasonable distance from the work area” in violation of 12 NYCRR 23-1.29 (b), plaintiffs fail to show prima facie how such violation could have been a substantial factor in bringing about the accident. Plaintiffs’ expert opinion on causation is conclusory, and without any probative value. Similarly, defendants fail to show prima facie how Keller’s positioning adjacent to the work area, and not upstream in the vicinity of the attenuator trucks, was not a substantial factor in bringing about the accident.
Accordingly, the branch of plaintiffs’ motion for summary judgment on their Labor Law § 241 (6) cause of action is denied, and the branches of defendant Tully’s and defendant Lockwood’s motion for summary dismissal of plaintiffs’ Labor Law § 241 (6) cause of action premised on violation of 12 NYCRR 23-1.29 (a) and (b) is also denied.
*740 The branch of Lockwood’s motion for summary judgment dismissal of plaintiffs Labor Law § 241 (6) premised upon violation of Occupational Safety and Health Administration (OSHA) regulations is granted without opposition. (See Cun-En Lin v Holy Family Monuments, 18 AD3d 800, 802 [2005].)
Common-Law Negligence/Labor Law § 200
Lockwood contends that it is entitled to summary dismissal of plaintiffs’ common-law negligence and Labor Law § 200 causes of action as against it.
Labor Law § 200 is merely a codification of the common-law duty placed upon owners and contractors to provide employees with a safe place to work (see Yong Ju Kim v Herbert Constr. Co., 275 AD2d 709, 712 [2d Dept 2000]). “Cases involving Labor Law § 200 fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a work site, and those involving the manner in which the work is performed.” (Ortega v Puccia, 57 AD3d 54, 61 [2d Dept 2008].) “These two categories should be viewed in the disjunctive.” (Id.)
“Where a premises condition is at issue, property owners may be held liable for a violation of Labor Law § 200 if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident.” (Id.; see also Reyes v Arco Wentworth Mgt. Corp., 83 AD3d 47, 51 [2d Dept 2011].)
“[A] contractor on a construction site will be liable for an injury caused by a dangerous condition on the site where it created the condition, or where, with sufficient control over the conditions on the site, the contractor failed to remedy the dangerous condition, or to prevent the injured worker’s exposure to it, within a reasonable time after the contractor had actual or constructive notice of the condition.” (See Delishi v Property Owner [USA] LLC, 31 Misc 3d 661, 671 [Sup Ct, Kings County 2011].)
“[W]hen a claim arises out of alleged defects or dangers in the methods or materials of the work, recovery against the owner or [a] contractor cannot be had . . . unless it is shown that the party to be charged had the authority to supervise or control the performance of the work.” (See Ortega v Puccia, 57 AD3d at 61; see also Delishi v Property Owner *741 [USA] LLC, 31 Misc 3d at 669-670.)
“The determinative factor on the issue of control is not whether a [defendant] furnishes equipment but whether he has control of the work being done and the authority to insist that proper safety practices be followed.” (Eldoh v Astoria Generating Co., L.P., 81 AD3d 871, 875 [2d Dept 2011], quoting Everitt v Nozkowski, 285 AD2d 442, 443-444 [2d Dept 2001].)
When an accident is alleged to involve defects in both the premises and methods and materials used at the work site, the property owner or contractor is “obligated to address the proof applicable to both liability standards.” (See Reyes v Arco Wentworth Mgt. Corp., 83 AD3d at 52.)
Here, as framed in their verified complaint, plaintiffs allege that the accident involved defects in both the premises and the methods and materials used at the work site. Plaintiffs allege that, at the time of the accident, the work site was not safe because, among other things, it was not properly protected from vehicular traffic, and plaintiffs allege that the accident happened because barrels, instead of an attenuator truck, were placed in the lane of traffic where Robert Keller was instructed to stand. However the nature of the alleged deficiencies may be characterized for purposes of Labor Law § 200, the result on this motion is the same.
With respect to liability premised on the method or materials of the work, Lockwood contends that “there is no evidence to establish that [it] had the right or authority to control the work performed by either Plaintiff.” “As a general rule, a party does not carry its burden in moving for summary judgment by pointing to gaps in its opponent’s proof, but must affirmatively demonstrate the merit of its claim or defense.” (Mennerich v Esposito, 4 AD3d 399, 400 [2d Dept 2004], quoting George Larkin Trucking Co. v Lisbon Tire Mart, 185 AD2d 614, 615 [4th Dept 1992].)
Here, Lockwood fails to establish prima facie that it did not have control of the work with respect to maintenance and control of traffic, and the authority to insist that proper safety practices be followed. Indeed, it would appear that Lockwood’s purpose at the construction site was to insist that proper safety practices be followed. Indeed, as noted above, Tafreshi testified that Lockwood was the representative of the State and had the authority to shut down the work if it determined that safety practices were not being followed. William Ryan of Tully averred that Lockwood was present at the work site, and approved all lane closures.
*742 Lockwood does not make any showing negating plaintiffs’ allegations with respect to the condition of the work site.
Lockwood also contends that it is entitled to summary judgment on plaintiffs common-law negligence and Labor Law § 200 causes of action based upon case law holding that “liability for an injury sustained by a worker may not be imposed upon an engineer who was hired to assure compliance with construction plans and specifications, unless the engineer commits an affirmative act of negligence or such liability is imposed by a clear contractual provision.” (See Torres v CTE Engrs., Inc., 13 AD3d 359, 359 [2d Dept 2004]; Hernandez v Yonkers Contr. Co., 306 AD2d 379, 380 [2003]; Fecht v City of New York, 244 AD2d 315, 315 [2d Dept 1997]; Suriano v City of New York, 240 AD2d 486, 487 [2d Dept 1997].) However, Lockwood fails to establish prima facie that it was hired solely to assure compliance with construction plans and specifications. Rather, as indicated above, there exist issues of fact with respect to the role that Lockwood had at the construction site, including whether its duties involved enforcing safety requirements by, among other things, shutting down the work if it determined that there were safety issues, and whether the ability to shut down work constituted sufficient control over the work or work site. (See e.g. Hutchinson v City of New York, 18 AD3d 370, 371 [2d Dept 2005] [differentiating between a consulting engineer hired only to “inspect the work of the contractor involving maintenance and protection of traffic requirements” with an “engineer-in-charge”].)
Accordingly, the branch of Lockwood’s motion for summary dismissal of plaintiffs’ Labor Law § 200 and common-law negligence causes of action as against it is denied.
In its motion, Tully also contends that it is entitled to summary dismissal of plaintiffs’ common-law negligence and Labor Law § 200 causes of action.
In this regard, Tully concedes that it implemented the lane closures and the maintenance and protection of traffic plan, including lane closures. However, Tully contends “[a]s for the action of Michael Hudson, Tully was not directing his actions at the time of the accident and was not on notice that he was in harm’s way,” and that Hudson “placed himself in harm’s way when he ran into the path of the speeding vehicle to push Robert Keller out of the way.”
The “danger invites rescue” doctrine (see Wagner v International Ry. Co., 232 NY 176, 180 [1921, Cardozo, J.])
*743 “create[s] a duty of care toward a potential rescuer where a culpable party has placed another person in a position of imminent peril which invites a third party, the rescuing plaintiff, to come to his aid, and also to encompass situations where the culpable party has placed himself or herself in a perilous situation which invites rescue.” (See Villoch v Lindgren, 269 AD2d 271, 273 [1st Dept 2000]; cf. Del Vecchio v State of New York, 246 AD2d 498, 500 [2d Dept 1998]; Tassone v Johannemann, 232 AD2d 627, 628 [2d Dept 1996].)
The danger invites rescue doctrine “has generally been applied when a defendant negligently injures or imperils another and a third person is injured coming to the aid of the person in jeopardy.” (See Del Vecchio v State of New York, 246 AD2d at 499.)
Here, Tully fails to make any showing of entitlement to summary dismissal of plaintiff Robert Keller’s Labor Law § 200 and common-law negligence causes of action. Indeed, there is no dispute that Tully was in control of the work site, as well as the work being performed by plaintiff Robert Keller. Moreover, the record demonstrates that there exist triable issues of fact as to whether Keller was standing in a third lane of traffic, which was closed by the use of only barrels as opposed to an attenuator truck. Since there exist issues of fact as to whether Tully was negligent with respect to plaintiff Robert Keller, and whether such negligence imperiled Robert Keller’s safety, Tully fails to establish prima facie that it did not have a duty of care with respect to plaintiff Michael Hudson, a person who was injured coming to the rescue of Robert Keller. (See Villoch v Lindgren, 269 AD2d at 273; cf. Del Vecchio v State of New York, 246 AD2d at 500; Tassone v Johannemann, 232 AD2d at 628.)
Tally’s contention that Robert Keller’s testimony should be disregarded as incredible and unbelievable as matter of law (Loughlin v City of New York, 186 AD2d 176, 177 [2d Dept 1992]) because it contradicts the testimony of “several witnesses and the records of [Lockwood]” is without merit. In this regard, Tully contends that “[i]t would have been impossible for his [sic] to stand in lane three for thirty minutes as he claims, as he would have been run over many times by traffic.” The summary of Keller’s testimony is inaccurate. Clearly, Keller testified that lane three had barrels that directed traffic away from the lane, which provides an explanation as to why he would not have been run over in the 30 minutes prior to the accident.
*744 Tully fails to otherwise make any showing of entitlement to summary dismissal of plaintiffs’ Labor Law § 200 and common-law negligence causes of action.
Tully also contends that it is entitled to summary dismissal of plaintiffs’ verified complaint on the ground that a “contractor is justified in relying upon the plans and specifications which [the contractor] has contracted to follow unless they are so apparently defective that an ordinary [contractor] of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury.” (See Gee v City of New York, 304 AD2d 615, 616 [2d Dept 2003].) However, there exists an issue of fact as to whether at the time of the accident the lane closure was performed in accordance with the plans and specifications. Indeed, plaintiff Robert Keller’s testimony about how many lanes, and the methods and means for closing the lanes, clearly contradicts Tully’s witnesses’ affidavits and testimony. Moreover, assuming the truth of Keller’s testimony, according to the affidavit of Tully’s own expert Fred Levine, the plans and specifications requiring the closure of only two lanes with use of attenuator trucks would not have been complied with.
Accordingly, the branch of Tully’s motion for an order granting it summary dismissal of plaintiffs’ common-law negligence and Labor Law § 200 causes of action is denied.
Contractual Indemnification
In its motion, Lockwood contends that it is entitled to contractual indemnification from Tully as a third-party beneficiary of a contract entered into between Tully and the State of New York Department of Transportation. “[A] party seeking contractual indemnification must prove itself free from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified therefor.” (Cava Constr. Co., Inc. v Gealtec Remodeling Corp., 58 AD3d 660, 662 [2d Dept 2009]; see also General Obligations Law § 5-322.1.) Here, since Lockwood fails to establish prima facie that it was free of negligence, it is not entitled to summary judgment on its claim for contractual indemnification as against Tully.
Accordingly, the branch of Lockwood’s motion for summary judgment on its third-party claim for contractual indemnification as against Tully is denied.
Plaintiffs’ Disclosure Motion
In its motion, by order to show cause, plaintiffs seek an order, pursuant to CPLR 3126 (3), striking the answer of defendant *745 Tully on the ground that it intentionally withheld the names of witnesses and provided “disingenuous, misleading and useless information regarding the identity of alleged witnesses.”
Specifically, plaintiffs object to Tully’s supplemental discovery exchange dated May 17, 2012, which was served after the filing of the note of issue. Plaintiffs establish that the supplemental discovery exchange was served late, and more importantly, does not comply with prior orders requiring Tully to provide the names and addresses of witnesses. (See Frenk v Frederick, 38 AD3d 593 [2d Dept 2007]; Brown v United Christian Evangelistic Assn., 270 AD2d 378, 379 [2d Dept 2000].) Even so, in light of the extensive amount of disclosure in this case, including depositions, it cannot be said that Tully’s failure to adequately provide the names and addresses of witnesses was willful. (See e.g. Brown v United Christian Evangelistic Assn., 270 AD2d at 379.)
As such, plaintiffs’ motion is granted only to the extent that no later than April 12, 2013, Tully shall serve upon all parties a response listing nothing other than the names and addresses of witnesses. No later than May 12, 2013, plaintiffs may serve either a notice to take deposition or serve a nonparty subpoena, whichever is appropriate, in order to take the deposition of any person that was not previously deposed. In the event that Tully attempts to introduce at trial the testimony of witnesses whose names and addresses were not previously disclosed, plaintiffs may seek an appropriate sanction at that time.
In sum, the branches of plaintiffs’ motion for summary judgment on the issue of liability as against defendants Douglas Kruger and Yolanda Silvera is granted, and the remaining branches of plaintiffs’ motion for summary judgment as against defendants Tully Construction Co. Inc. and Lockwood, Kessler & Bartlett, Inc. are denied. The branch of Lockwood, Kessler & Bartlett, Inc.’s motion for dismissal of plaintiffs’ Labor Law § 241 (6) cause of action premised upon violations of OSHA is granted without opposition. Defendant Tully Construction Co. Inc.’s motion and the remaining branches of defendant Lockwood, Kessler & Bartlett, Inc.’s motions for summary judgment are both denied. Plaintiffs’ motion, by order to show cause, is granted to the extent set forth in this decision and order.